# FORM FOR USE IN APPLICATIONS
# FOR HABEAS CORPUS UNDER U.S.C. §2254

## 00-6078

## CIV-ZLOCH

NAME: JOHN CAPELLETTI

PRISON NUMBER: #905604

MAGISTRATE JUDGE
SORRENTINO

NAME OF PLACE OF CONFINEMENT: Zephyrhills Correctional Institution

ADDRESS OF PLACE OF CONFINEMENT: 2739 Gall Blvd.

Zephyrhills, Fl. 33541-9701

THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF FLORIDA,

Ft. Lauderdale DIVISION

CASE NO._____

(TO BE SUPPLIED BY CLERK OF U.S. DISTRICT COURT)

JOHN CAPELLETTI _____ , PETITIONER
(FULL NAME)        (INCLUDE NAME UNDER WHICH YOU WERE CONVICTED)

## VS.

MICHAEL W. MOORE, SECT'Y FLA. DEPT. OF CORRECTIONS ___ , RESPONDENT
(NAME OF WARDEN, SUPERINTENDENT, JAILOR, OR AUTHORIZED PERSON HAVING CUSTODY OF PETITIONER)

AND

THE ATTORNEY GENERAL OF THE STATE OF FLORIDA, _____

Robert Butterworth _____ , ADDITIONAL RESPONDENT.

(If petitioner is attacking a judgment which imposed a sentence to be served in the *future*, petitioner must fill in the name of the state where the judgment was entered. If petitioner has a sentence to be served in the *future* under a federal judgment which he wishes to attack, he should file a motion under 28 U.S.C. §2255, in the federal court which entered the judgment.)

(Rev. 1/97)

1

# PETITION

1.  Name and location of court which entered the judgment of conviction under attack and state court case number(s):  #97-7797CF10A, Seventeenth Judicial Circuit

    Court, Broward County Florida

2.  Date of judgment of conviction: January 08, 1998

3.  Length of sentence: 30 Years

4.  Sentencing judge: James I Cohn

5.  Nature of offense or offenses for which you were convicted: Attempted First

    Degree Murder (1 Count)

6.  What was your plea? (Check one)

    (a) Not guilty        ( X )
    (b) Guilty            (   )
    (c) Nolo contendere   (   )

    If you entered a guilty plea to one count or indictment, and a not guilty plea to another count or indictment, give details: _____

7.  Type of trial:  (Check one)

    (a) Jury  ( X )            (b) Judge only  (   )

8.  Did you testify at the trial?  Yes (   )   No ( X )

(Rev. 1/97)                                   2

9.  Did you appeal from the judgment of the conviction? Yes ( X )   No (   )

10.  If you did appeal, answer the following:

(a) Name of court _Fourth District Court of Appeals (Florida)_____

(b) Result _per curiam affirmed_____

(c) Date of result _Mandated April 9, 1999_____

If you filed a second appeal or filed a petition for certiorari in the Florida Supreme Court or the United States Supreme Court, give details:_____

_____

_____

_____

11.  Did you file any postconviction motions under either Florida Rule of Criminal Procedure 3.800 or 3.850 with the state trial court or any other postconviction motions or petitions for writ of habeas corpus with the state trial court or state appellate court to this judgment and conviction?  Yes (   )  No ( x )

12.  If you did file any matters within the realm of question 11, answer the following as to each motion or petition.  Attach separate pages as needed for each motion or petition filed.

(a)  The type of motion/petition filed _____

(b)  Date motion/petition filed _____

(c)  Name of court _____

(d)  Result _____

(e)  Date of result _____

13.  If your motion or petition described in paragraph 12 was denied, did you file an appeal of that denial with the appropriate state appellate court?  Yes (   )    No (   )

As to each motion or petition (attach separate pages as needed) indicate:

(a)  Name of court where appeal filed _____

(b)  Date appeal filed _____

(c)  Result _____

(d)  Date of result _____

14.    State *concisely* every ground on which you claim you are being held unlawfully.  Summarize *briefly* the *facts* supporting each ground.

   CAUTION:    In order to proceed in the federal court, you must ordinarily first exhaust your state court remedies as to each ground on which you request action by the federal court.  As to all grounds on which you have previously exhausted state court remedies, you should set them forth in this petition if you wish to seek federal relief.  If you fail to set forth all such grounds in this petition, you may be barred from presenting them at a later date.

For your information, the following is a list of the most frequently raised grounds for relief in habeas corpus proceedings.  Each statement preceded by a letter constitutes a separate ground for possible relief.  You may raise grounds which you may have other than those listed if you have exhausted all your state court remedies with respect to them.  However, *you should raise in this petition all available grounds* (relating to this conviction) on which you base your allegations that you are being held in custody unlawfully.

If you select one or more of these grounds for relief, you must allege facts in support of the ground or grounds which you choose.  Do not check any of the grounds listed below.  The petition will be returned to you if you merely check (a) through (j) or any one of these grounds.

(a)    Conviction obtained by a plea of guilty which was unlawfully induced or not made voluntarily with understanding of the nature of the charge and the consequence of the plea.

(b)    Conviction obtained by use of coerced confession.

(c)    Conviction obtained by use of evidence gained pursuant to an unconstitutional search and seizure (where the state has not provided a full and fair hearing on the merits of the Fourth Amendment claim).

(d)    Conviction obtained by use of evidence obtained pursuant to an unlawful arrest (where the state has not provided a full and fair hearing on the merits of the Fourth Amendment claim).

(e)    Conviction obtained by violation of the privilege against self-incrimination.

(f)    Conviction obtained by the unconstitutional failure of the prosecution to disclose to the defendant evidence favorable to the defendant.

(g)    Conviction obtained by the violation of the protection against double jeopardy.

(h)    Conviction obtained by action of a grand or petit jury which was unconstitutionally selected and impaneled.

(i)    Denial of effective assistance of counsel.

(j)    Denial of right of appeal.

A.    Ground one: __SEE ATTACHED_____

_____

Supporting FACTS (tell your story *briefly* without citing cases or law):

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

Exhaustion of ground one in the state courts:

(1)    Did you raise ground one in the appropriate Florida District Court of Appeal on a direct appeal of your conviction?
Yes ( X )   No (  )

(2)    After your conviction did you raise ground one in the state circuit court that sentenced you by filing a motion under Florida Rule of Criminal Procedure 3.850?
Yes (  )   No ( X )

    (a)    If your answer is "yes", then state:

        i.    Date motion filed _____

        ii.    Whether you received an evidentiary hearing _____

        iii.    Result_____

        iv.    Date of result_____

    (b)    If your Rule 3.850 Motion was denied, did you file an appeal of that denial with the appropriate Florida District Court of Appeal?
Yes (  )   No (  )

(Rev. 1/97)                                    5

## GROUND ONE

**PETITIONER'S DUE PROCESS RIGHTS WERE VIOLATED BY THE TRIAL COURT'S DENIAL OF THE MOTION FOR JUDGMENT OF ACQUITTAL WHEN THERE WAS NO FACTUAL EVIDENCE TO CONVICT THE PETITIONER THUS VIOLATING HIS DUE PROCESS RIGHTS UNDER THE 5TH AND 14TH U.S. CONSTITUTIONAL AMENDMENTS**

The entire case of the prosecution was based on it's "star witness", the victim Mr. Christopher D'Ambrosio, whose testimony was tainted with vengeance. (See Ground Two of the instant petition.) There can be no conviction unless there is supporting evidence to the testimony. There was not. There were **no fingerprints** on any of the shells that were found expended in the vehicle. There was **no gunpowder residue** found on the petitioner. There was only the remarks of a witness whose motives were questionable at best. Even though it can certainly be said that the petitioner had a verbal "jousting" match with the victim, that verbiage certainly did **not** cause the victim's injuries, and **that** in and of itself is **insufficient** to charge the petitioner with Attempted First Degree Murder. However since it **did** occur that way, the jury obviously felt something was amiss as they only convicted the petitioner of Attempted First Degree Murder, a lesser included offense and **that** conviction does not hold up under close scrutiny based on the absence of evidence. It must also be noted that the lesser included offense that jury used **did not include a weapon**. Yet the Court used an aggravating factor for a sentence enhancement that would require a weapon. (See Ground Three of the instant petition) The testimony of a vengeful, malicious witness along with the specific facts that **no actual evidence existed as to the petitioner committing the crime** apparently caused the conviction in error as a case **not proven** beyond the threshold required in circumstantial evidence cases. This then is a substantial violation of the petitioner's due process rights under the 5th and 14th U.S. Constitutional Amendments.

Had the Court protected the petitioner's rights as is the Court's obligation,  the petitioner would **not** have been convicted of a crime **he did not commit** nor would he be serving the sentence currently imposed.

See Memorandum of Law Ground One.

i.   If you failed to appeal the denial of your Rule 3.850 motion, explain briefly why _____

_____

ii.  Date appeal filed, result of appeal, and date of result _____

_____

(3)   Have you raised ground one in any other petition, application, or motion filed in the state courts of Florida?
Yes ( )   No (X )

If your answer is yes, then give the details, including the date the petition, application, or motion was filed, grounds raised, the court's decision, and the date of said decision for each such petition, application, or motion, whether there was an appeal of each decision, and the result of the appeal_____

_____

_____

_____

_____

_____

B.   Ground two:___ SEE ATTACHED _____

_____

Supporting FACTS (tell your story *briefly* without citing cases or law):

_____

_____

_____

_____

_____

_____

_____

_____

(Rev. 1/97)                                    6

## GROUND TWO

**PETITIONER'S DUE PROCESS RIGHTS WERE VIOLATED BY THE TRIAL COURT'S DENIAL OF THE MOTIONS FOR MISTRIAL AND BY ALLOWING OF IMPROPER, IRRELEVANT AND INFLAMMATORY TESTIMONY THUS VIOLATING THE PETITIONER'S RIGHTS UNDER THE 5TH AND 14TH U.S. CONSTITUTIONAL AMENDMENTS**

The victim's testimony was apparently the only thing used by the jury to convict the petitioner as there was no evidence whatsoever. But a review of the record will show that there can be no mistaking that the testimony of the victim was based on maliciousness and vengeance. He consistently had to be admonished by the judge for his blatantly inflammatory comments. He consistently ignored the judge's warnings while supplying other innuendoes and gratuitous comments on his accord. See transcript pages 248-249, 254, 258, 266-269, 276, 283. A particularly outrageous statement made by the victim had him referring to the Oklahoma City bomber Terry Nichols when discussing the petitioner. See transcript page 317. Again incredulously the Judge denied a Mistrial motion. This testimony along with the specific facts that **no actual evidence existed as to the petitioner committing the crime** can be the only logical reason that caused the conviction and that is in error.

Had the Court disallowed the flagrantly improper testimony by the victim, or had the court approved the Mistrial motions as required when testimony of this type is continuous, the petitioner's due process rights as guaranteed by the 5th and 14th U.S. Constitution Amendments would not have been violated and the petitioner would not be serving the sentence presently imposed.

See Memorandum of Law Ground Two.

6A

Exhaustion of ground two in the state courts:

(1)     Did you raise ground two in the appropriate Florida District Court of Appeal on a direct appeal of your conviction?
Yes (X )   No (  )

(2)     After your conviction, did you raise ground two in the state circuit court that sentenced you by filing a motion under Florida Rule of Criminal Procedure 3.850?
Yes (  )   No (x )

       (a)     If your answer is "yes", then state:

             i.   Date motion filed _____

             ii.  Whether you received an evidentiary hearing _____

             iii. Result _____

             iv.  Date of result_____

       (b)     If your Rule 3.850 Motion was denied, did you file an appeal of that denial with the appropriate Florida District Court of Appeal? Yes (  )    No (  )

             i.   If you failed to appeal the denial of your Rule 3.850 motion, then explain briefly why _____

                          _____

             ii.  Date appeal filed, result of appeal, and date of result _____

                          _____

(3)     Have you raised ground two in any other petition, application or motion filed in the state courts of Florida?
Yes (  )   No (x )

If your answer is yes, then give the details, including the date the petition, application, or motion was filed, the grounds raised, the court's decision, and the date of said decision for each such petition, application, or motion, whether there was an appeal of each decision, and the result of the appeal_____

_____

_____

_____

_____

_____

C.    Ground three:____SEE  ATTACHED_____

_____

Supporting FACTS (tell your story *briefly* without citing cases or law):_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

Exhaustion of ground three in the state courts:

(1)    Did you raise ground three in the appropriate Florida District Court of Appeal on a direct appeal of your conviction?
Yes ( X )   No (  )

(2)    After your conviction did you raise ground three in the state circuit court that sentenced you by filing a motion under Florida Rule of Criminal Procedure 3.850?
Yes (  )   No ( X )

        (a)    If your answer is "yes", then state:

                i.    Date motion filed _____

                ii.   Whether you received an evidentiary hearing _____

                iii.  Result_____

                iv.   Date of result_____

        (b)    If your Rule 3.850 Motion was denied, did you file an appeal of that denial with the appropriate Florida District Court of Appeal?
Yes (  )   No (  )

## GROUND THREE

**PETITIONER'S DUE PROCESS RIGHTS WERE VIOLATED BY THE TRIAL COURT'S DEPARTURE SENTENCE WHERE THERE WERE NO VALID GROUNDS THUS VIOLATING HIS DUE PROCESS RIGHTS UNDER THE 5TH AND 14TH U.S. CONSTITUTIONAL AMENDMENTS**

The trial court used as aggravating reasons for departure sentence "Defendant occupied a leadership role in a criminal organization" and "Offense created substantial risk of death or great bodily harm to many persons or to one or more small children". These reasons are totally ludicrous considering the testimony at trial and the evidence presented. In reality, the case presented by the State **never** proved that the petitioner **ever had a gun or fired the shot** that wounded the victim. Also the jury was never convinced, as they convicted the petitioner of only a lesser included offense **and without a firearm**. However, it appears the trial court judge apparently decided that the jury did **not** know what they were doing, as the Judge departed from the sentencing guidelines and used obviously improper reasons for the sentence enhancement/aggravation. Even a cursory review supports that there was **no** criminal organization involved that had any connection with the petitioner. Additionally, there was only **one** victim involved and even that person can not absolutely state that the petitioner **ever fired the weapon that injured the victim**. Therefore it escapes at the very least the most elementary logic how the 2 reasons given could ever be explained adequately enough to support the sentence enhancement.

If the court was without foundation as to the aggravating reasons for a departure sentence and it violated the petitioner's rights of due process as guaranteed by the U.S. Constitution 5th and 14th Amendments.

See Memorandum of Law Ground Three.

8A

     i.   If you failed to appeal the denial of your Rule 3.850 motion, explain briefly why _____

_____

     ii.   Date appeal filed, result of appeal, and date of result_____

_____

(3)    Have you raised ground three in any other petition, application, or motion filed in the state courts of Florida?
Yes ( )   No ( X )

If your answer is yes, then give the details, including the date the petition, application, or motion was filed, grounds raised, the court's decision, and the date of said decision for each such petition, application, or motion, whether there was an appeal of each decision, and the result of the appeal _____

_____

_____

_____

_____

_____

_____

_____

_____

_____

D.    Ground four:_____~~SEE ATTACHED~~_____

Supporting FACTS (tell your story *briefly* without citing cases or law):_____

_____

_____

_____

_____

_____

_____

## GROUND FOUR

**THE APPEALS COURT ERRED IN DENYING PETITIONER'S DIRECT APPEAL WHERE SUFFICIENT GROUNDS WERE PRESENTED TO REMAND FOR A NEW TRIAL THUS VIOLATING PETITIONER'S RIGHTS TO DUE PROCESS UNDER THE 5TH AND 14TH U.S. CONSTITUTIONAL AMENDMENTS**

The Florida Fourth District Court of Appeal denied the direct appeal of the petitioner when there was **more** than sufficient reason to reverse and remand the judgment and sentence. This can readily be seen in Grounds One, Two, and Three of the instant petition.

There was **no evidence against the petitioner.** There was only a disgruntled, vengeful, malicious victim who had his "own ax to grind". There was blatant misconduct by the victim during testimony that should have caused the granting of **any *one* of the many motions for mistrial**. Therefore it can only be said that the denial was **without** foundation. The petitioner is innocent of the charges and crimes attributed to him and has maintained his innocence throughout. However it was obviously to no avail in the lower courts and he must seek relief from this Court. When the three issues are combined there exists an absolute travesty of justice, which obliterated the due process rights of the petitioner.

Therefore, the court in denying the petitioner relief, denied the petitioner his due process rights as denoted in the United States Constitutional 5th and 14th Amendments as this is a conviction based on **no evidence or factual testimony**. This certainly has caused the petitioner to be currently serving a sentence that should never have been imposed based on a conviction that should never have occurred.

See Memorandum of Law Ground Four.

9A

Exhaustion of ground four in the state courts:

(1)    Did you raise ground four in the appropriate Florida District Court of Appeal on a direct appeal of your conviction?
Yes ( )   No (X)

(2)    After your conviction did you raise ground four in the state circuit court that sentenced you by filing a motion under Florida Rule of Criminal Procedure 3.850?
Yes ( )   No (X)

    (a)    If your answer is "yes", then state:

        i.  Date motion filed _____

        ii.  Whether you received an evidentiary hearing _____

        iii.  Result_____

        iv.  Date of the result_____

    (b)    If your Rule 3.850 Motion was denied, did you file an appeal of that denial with the appropriate Florida District Court of Appeal? Yes ( )   No ( )

        i.  If you failed to appeal the denial of your Rule 3.850 motion, explain briefly why _____

        _____

        ii.  Date appeal filed, result of appeal, and date of result _____

        _____

(3)    Have you raised ground four in any other petition, application, or motion filed in the state courts of Florida? Yes ( )   No (X)

If your answer is yes, then give the details, including the date the petition, application, or motion was filed, the grounds raised, the court's decision, and the date of said decision for each such petition, application, or motion, whether there was an appeal of each decision, and the result of the appeal _____

_____

_____

_____

_____

_____

15.  Have you previously filed any petitions, applications, or motions with respect to your judgment and conviction in any federal court?
Yes ( ) No ⊠ )

16.  If your answer to 15 was "yes", give the following information:

(a)  (1)  Name of court_____

(2)  Nature of proceeding and date action filed_____

_____

(3)  Grounds raised_____

_____

_____

_____

_____

_____

_____

(4)  Did you receive an evidentiary hearing on your petition, application or motion? Yes ( )   No ( )

(5)  Result_____

(6)  Date of result_____

(b)  As to any second petition, application or motion give the same information:

(1)  Name of court_____

(2)  Nature of proceeding and date action filed_____

_____

(3)  Grounds raised_____

_____

_____

_____

_____

_____

       (4)    Did you receive an evidentiary hearing on your petition, application or motion? Yes ( )    No ( )

       (5)    Result_____

       (6)    Date of result_____

(c)    Did you appeal to the highest court having jurisdiction the result of any action taken on any petition, application or motion:

       (1)    First petition, etc.    Yes ( )    No ( )
       (2)    Second petition, etc.  Yes ( )    No ( )

(d)    Date appeal filed _____

       Result of appeal and date of result _____

(e)    If you did *not* appeal from the adverse action on any petition, application or motion, explain briefly why you did not: _____

_____

_____

_____

_____

_____

_____

17.    Do you have any petition or appeal now pending in any court, either state or federal, as to the judgment under attack?  Yes ( )  No (X)

18.    If you have previously filed a petition for writ of habeas corpus related to this conviction and sentence in federal court, you must first move in the appropriate court of appeal for an order authorizing the federal district court to consider the application.  Have you filed such a motion? Yes ( )  No (X )

    If your answer to question 18 is yes, provide the following information:

    (a)    Name of court where motion filed _____

    (b)    Date motion filed _____

    (c)    Result and date of result_____

If your answer to question 18 is no, indicate why you failed to do so _____

_____

19. Give the name and address, if known, of each attorney who represented you in the following stages of the judgment attacked herein:

    (a)    At preliminary hearing __Rene Dadowski, Ass't. Public Defender__
     201 SE 6th St. Rm 3873, Ft. Lauderdale,Fl. 33301

    (b)    At arraignment and plea __same__

    (c)    At trial __same__

    (d)    At sentencing __same__

    (e)    On appeal __Sophia Letts, Ass't. Public Defender, 421 3rd St.__
    6th Fl., West Palm Beach, Fl. 33401

    (f)    In any post-conviction proceeding __none__

    (g)    On appeal from any adverse ruling in post-conviction proceeding_____

20. Were you sentenced on more than one count of an indictment, or on more than one indictment, in the same court and at the same time? Yes ( )   No ( X )

21. Do you have any future sentence to serve after you complete the sentence imposed by the judgment under attack? Yes ( )   No (X )

    (a)    If so, give name and location of court which imposed sentence to be served in the future: _____

    (b)    Date and length of sentence to be served in the future:_____

    (c)    Have you filed, or do you contemplate filing, any petition attacking the judgment which imposed the sentence to be served in the future? Yes ( )   No ( )

(Rev. 1/97)

13

Wherefore, petitioner prays that the court grant petitioner relief to which he may be entitled in this proceeding.

**I UNDERSTAND THAT ANY FALSE STATEMENT OR ANSWER TO ANY QUESTIONS IN THIS APPLICATION WILL SUBJECT ME TO THE PENALTIES OF PERJURY (A FINE OF $250,000 OR IMPRISONMENT FOR FIVE (5) YEARS, OR BOTH).**

I declare that under penalty of perjury that the foregoing is true and correct.

Executed on _1- 7- 2000_____
                      Date

_____John Capelletti_____
                      Signature

_____
Signature of Attorney (If Any)

(Rev. 1/97)                                  **14**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT
FT. LAUDERDALE DIVISION

JOHN CAPELLETTI,

    Petitioner,

v.

Case No. **00-6078**

**CIV-ZLOCH**

**MAGISTRATE JUDGE
SORRENTINO**

MICHAEL W. MOORE, SECT'Y.
FLORIDA DEPARTMENT OF CORRECTIONS,

    Respondent.

_____/

------------------------------------------------------------------------------------

## MEMORANDUM OF LAW

## IN SUPPORT OF A

## PETITION FOR WRIT OF HABEAS CORPUS

------------------------------------------------------------------------------------

John Capelletti,  *pro se*
#905604  MB # 013
Zephyrhills Correctional Institution
2739 Gall Blvd.
Zephyrhills, Fl. 33541-9701

## GROUND ONE

**PETITIONER'S DUE PROCESS RIGHTS WERE VIOLATED BY THE TRIAL COURT'S DENIAL OF THE MOTION FOR JUDGMENT OF ACQUITTAL WHEN THERE WAS NO FACTUAL EVIDENCE TO CONVICT THE PETITIONER THUS VIOLATING HIS DUE PROCESS RIGHTS UNDER THE 5TH AND 14TH U.S. CONSTITUTIONAL AMENDMENTS**

The petitioner all throughout the progress of the case, kept advising his counsel that he **did not do the crime**. When it came time for the trial, there was **no evidence** that was presented by the State that ever established the petitioner's guilt which goes to support the contentions made by the petitioner to the defense counsel. This of course precipitated a motion for judgment of acquittal, which by all sense, should have been granted by the court.

The testimony of the "star" witness, who was the victim, certainly did not conform to acceptable standards as it was highly inflammatory and malicious without also being credible, and as there was **no actual further evidence** that the prosecution could present, the petitioner was obviously convicted without the completing the burden of proof that is inherent in the presentation of the State's case. Thus the petitioner was convicted totally improperly and unjustly, which violated the petitioner's guaranteed rights of due process.

A proper standard to apply in deciding a motion for judgment of acquittal is whether reasonable minds can conclude that evidence is inconsistent with any hypothesis of accused innocence, and if there is substantial evidence to support guilty verdict as to each element of the crime, then judgment of acquittal may not be granted. U.S. v. Shankman, 13 F.Supp.2d 1358 (S.D. GA. 1998) In the case at bar **each element** of the case was **not proven** by the prosecution and therefore the motion **should have been granted**. When considering a motion for judgment of acquittal, district court must determine whether relevant evidence, viewed in light most favorable to the government, could be accepted by the jury as adequate and sufficient to support conclusion of defendant's guilt beyond reasonable doubt. U.S. v. Taylor, 972 F.2d 1247 (11th Cir. 1992)

appeal after remand 88 F.3d 938. Even where viewing the evidence in a light most favorable to the government, a judgment of acquittal should have been granted in this case.

Government must prove beyond a reasonable doubt every element of a charged offense. Victor v. Nebraska, 511 U.S. 1, 114 S.Ct. 1239, 127 L.Ed.2d 583 (1994), reh.denied Sandoval v. California, 511 U.S. 1101, 114 S.Ct. 1872, 128 L.Ed.2d 492. Also see U.S. v. Applewhite, 72 F.3d 140 (C.A. DC 1995), 315 U.S. App. DC 222, on reh. in part and on reh. in part cert. denied, Branch v. U.S. 517 U.S. 1277, 116 S.Ct. 1864, 134 L.Ed.2d 962; and U.S. v. Nguyen, 73 F.3d 887 (9th Cir. 1995). The state has to prove guilt beyond a reasonable doubt. Harvell v. Nagle, 58 F.3d 1541 (11th Cir. 1995) reh. denied ---- U.S. -----, 116 S.Ct. 1859, 134 L.Ed.2d 968 (1996). This **did not occur** in the instant case. There was **no evidence whatsoever**, to support the claims made by the "star" witness of the state.

The jury has to base the decision it makes on the evidence. Victor, *supra*. However, where the evidence did not support a conviction, the jury was not acting in accordance with established law. See Felker v. Turpin, 83 F.3d 1303 (11th Cir. 1996). The state has to prove guilt beyond a reasonable doubt, or to moral certainty, in order to overcome the presumption of innocence. *Id.* In order for a criminal defendant to be lawfully convicted, jury must find that the government carried the burden of proof beyond reasonable doubts with respect to each of the elements of the crime with which he is charged. U.S. v. Nguyen, *supra*. With no evidence, the complete reliance on the inconsistent and inaccurate statements of a single witness **must** shed doubt on the guilt of the petitioner. **The jury was obviously *not* completely convinced as the verdict was for a lesser included offense**.

Although the Constitution does not guarantee state defendants the right to a unanimous verdict, it does require that criminal charges be proved beyond a reasonable doubt. Scruggs v. Williams, 903 F.2d 1430 (11th Cir. 1990). The U.S. Constitution requires the Government to prove beyond a reasonable doubt every fact necessary to constitute the crime with which the defendant is charged. U.S. v. Talbot, 78 F.3d 1183 (7th Cir. 1996), appeal after remand 107 F.3d

874, citing <u>In Re: Winship</u>, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970) and <u>Mason v.</u> <u>Gramley</u>, 9 F.3d 1345 (7th Cir. 1993).

Guilt beyond a reasonable doubt can not be premised on pure conjecture. <u>U.S. v. Spinney</u>, 65 F.3d 231 (1st Cir. 1995) Also see <u>Stewart v. Coalter</u>, 48 F.3d 610 (1st Cir. 1995), <u>cert.</u> <u>denied</u>, 516 U.S. 853, 116 S.Ct. 153, 133 L.Ed.2d 97 (1995). Defendant may not be convicted merely because facts presented are susceptible to interpretation of guilt; there must be sufficient evidence, direct or circumstantial to support interpretation beyond reasonable doubt in the eyes of reasonable jurors. <u>U.S. v. Kinard</u>, 788 F.Supp. 36 (D.DC 1992).

Had the Court protected the petitioner's rights as is the Court's obligation and not allowed a conviction by the jury based on a "pyramiding of inferences" by instead granting the Motion for Judgment of Acquittal, the petitioner would **not** have been convicted of a crime **he did not** **commit** nor would he be serving the sentence currently imposed.

## GROUND TWO

**PETITIONER'S DUE PROCESS RIGHTS WERE VIOLATED BY THE TRIAL COURT'S DENIAL OF THE MOTIONS FOR MISTRIAL AND BY ALLOWING OF IMPROPER, IRRELEVANT AND INFLAMMATORY TESTIMONY THUS VIOLATING THE PETITIONER'S RIGHTS UNDER THE 5TH AND 14TH U.S. CONSTITUTIONAL AMENDMENTS**

A person accused of a crime is guaranteed the right to a fair trial by the U.S. Constitution. Concerning this there can be no argument or discussion. However, when the fairness of the trial comes into question concerning the testimony being given and it's truthfulness and factual basis, the Court has the obligation to explore the matter. When the vengeful and blatantly intentionally inflammatory testimony was given by the victim in the instant case, there should never have been any question with regards the granting of **any** of the Motions for Mistrial. There can never be **enough** curative instructions to a jury, when the person testifying continues, over and over again, to give highly malicious remarks. The damage is beyond repair as it is cumulative.

The standard for granting a new trial is simply one which measures result in terms of whether miscarriage of justice has occurred. U.S. v. Brown, 913 F.Supp. 1324 (D.MN. 1996)

Mistrial is a severe remedy, a step to be avoided whenever possible, and one to be taken only in circumstances manifesting necessity thereof. U.S. v. Clarke, 24 F.3d 257 (C.A. DC. 1994). The cumulative effect of the comments made by the victim that were outside the realm of proper testimony made the necessity of a mistrial painfully clear in the case at bar. Declaring a mistrial is appropriate only when a cautionary instruction is unlikely to cure the prejudicial effect of an error. U.S. v. Randall, 162 F.3d 557 (9th Cir. 1998) cert. denied 119 S.Ct. 1480, 143 L.Ed.2d 563.

Granting mistrial motions depends on whether witness' statements so infected the trial with unfairness and violated the petitioner's rights under due process. See Phea v. Benson, 95 F.3d 660 (8th Cir. 1996). This most assuredly occurred in the case at bar.

New trials are granted only upon demonstration of adverse effects on substantial rights of defendant. U.S. v. Rasco, 123 F.3d 222, cert. denied 118 S.Ct. 868, 139 L.Ed.2d 765 (5th Cir.

1997), and <u>U.S. v. Clements</u>, 73 F.3d 1330 (5th Cir. 1996). There can be no question that in the instant case, the testimony by the victim was so egregiously malicious and vengeful, that no amount of "corrective" instruction by the court to the jury could overcome the damage. This also becomes further apparent when there is no actual physical evidence to support the petitioner as the assailant in this case.

Had the Court acted properly and judiciously, any one of the Motions for Mistrial-especially the last one-would have been granted due to the tainting of the jury by the remarks made by the witness, and the petitioner would not have been convicted nor be serving the sentence he currently is under.

## GROUND THREE

**PETITIONER'S DUE PROCESS RIGHTS WERE VIOLATED BY THE TRIAL COURT'S DEPARTURE SENTENCE WHERE THERE WERE NO VALID GROUNDS THUS VIOLATING HIS DUE PROCESS RIGHTS UNDER THE 5TH AND 14TH U.S. CONSTITUTIONAL AMENDMENTS**

When a trial court uses enhancement reasons for a departure sentence in order to not violate the due process of the convicted person, the reasons must be proper and supported by the evidence. The trial court in the instant case did not use **any** valid reason for departure. The evidence clearly did **not** support the reasons given and thus the sentence is enhanced illegally.

The two reason used for the departure were: 1) Defendant occupied a leadership role in a criminal organization; and 2) Offense created substantial risk of death or great bodily harm to many persons or to one or more small children. How could the court ever justify the use of these reasons after a hearing the testimony given? **At no time** was it **ever** established that the petitioner **ever** was in leadership role as envisioned for a departure reason. Also **at no time** was it **ever** established that the petitioner **ever fired a gun** thus he could **not** be enhanced by using the second reason. The jury even acknowledged this when it refused to convict the petitioner of the offense including the use of a weapon. Therefore the court was without foundation as to the aggravating reasons for a departure sentence.

It is well settled in Florida case law that departure reasons must be supported by the evidence. See Delisi v. State, 627 So.2d 117 (Fla. 2d DCA 1993); Waychoff v. State, 624 So.2d 392 (Fla. 2d DCA 1993); Green v. State, 662 So.2d 748 (Fla. 4th DCA 1995)

A managerial role enhancement can not be imposed under Sentencing Guidelines unless there is a preponderance of evidence that the defendant supervised or controlled others, or exercised some management responsibility over the activities of a criminal organization. U.S. v.

Glinton, 154 F.3d 1245 (11th Cir. 1998). In the instant case there was **no** criminal organization, **no** management responsibility, and **no** evidence of anything concerning it.

To warrant offense level sentencing enhancement based on defendant's role as organizer or leader in criminal activity, government must prove existence of aggravating role by a preponderance of the evidence. U.S. v. Alred, 144 F.3d 1405 (11th Cir. 1998). When the defendant challenges one of the factual bases of his sentence, government has burden of establishing disputed fact by a preponderance of evidence; **this burden must be satisfied with reliable and specific evidence**. U.S. v. Sepulveda, 115 F.3d 882 (11th Cir. 1997) (emphasis added) Sentencing court **may not speculate** on extent of defendant's involvement in conspiracy, and preponderance of must support it's findings. U.S. v. Brazel, 102 F.3d 1120 (11th Cir. 1997) (emphasis added) cert. denied Jefferson v. U.S., Archer v. U.S., McNealy v. U.S., 118 S.Ct. 78, 139 L.Ed.2d 37, cert. denied Burgess v. U.S., 118 S.Ct. 720, 139 L.Ed.2d 659, post conviction relief denied U.S. v. McKinnon, 27 F.Supp.2d 1369. The Court should take note that Alred, Sepulveda, and Brazel are **all** from the circuit of the case at bar.

Had the Court been required to show that the departure reasons were from a preponderance of the evidence, it **could not** have and therefore the sentence **that is** imposed is in direct violation of the petitioner's due process rights and could not have been legally pronounced.

## GROUND FOUR

**THE APPEALS COURT ERRED IN DENYING PETITIONER'S DIRECT APPEAL WHERE SUFFICIENT GROUNDS WERE PRESENTED TO REMAND FOR A NEW TRIAL THUS VIOLATING PETITIONER'S RIGHTS TO DUE PROCESS UNDER THE 5TH AND 14TH U.S. CONSTITUTIONAL AMENDMENTS**

When the petitioner's direct appeal was *per curiam affirmed* by the Fourth District Court of Appeals for Florida, his due process rights were totally usurped. As can be seen by a review of Grounds 1,2, & 3 in this petition, the petitioner **has** brought forth sufficient grounds to show that he was convicted in error and should not be incarcerated.

The relevant inquiry for a federal habeas court reviewing a sufficiency of evidence claim, is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). This is what was presented to the lower court in the appeal, but it was denied and the petitioner avers that this in error and violates his due process rights.

A fundamental miscarriage of justice occurs in an extraordinary case where a constitutional violation has probably resulted in the conviction of one who is actually innocent. Murky v. Carrier, 477 U.S. 478, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986). The evidence in the instant case most certainly does **not** point to the petitioner as being the perpetrator. It only points to the victim as being malicious and vengeful. One must also remember that there was **no direct evidence** implicating the petitioner. So the question that begs asking is, How could the Court allow this to go unnoticed? It is the petitioner's fervent hope *this* Court does not.

Therefore the appeals court should have granted the petitioner's direct appeal and reversed and remanded the case back for a new **fair** trial as is the petitioner's rights under the U.S. Constitutional 5th and 14th Amendments.

## CONCLUSION

In all the grounds presented, the petitioner has shown clearly that his rights to due process guaranteed by the 5th and 14th U.S. Constitutional Amendments were most assuredly violated in no small measure.

The due process violations in not granting the Motion for Judgment of Acquittal or **any** of the Motions for Mistrial is painfully obvious. The invalid reasons used to enhance the sentence compounds the injustice. The fact an individual is convicted based on nothing more than the testimony of a malicious and vengeful person and with **no actual evidence** goes even further to show the injustice. Then to have the appeals court to simply "rubber stamp" the trial court's decision, the totality of these actions becomes a **manifest injustice**.

Cumulative effect of errors may deprive the petitioner of due process and a fair trial. McDowell v. Calderon, 107 F.3d 1351 (9th Cir. 1997). This has most assuredly occurred in the instant case.

The petitioner is entitled to have this case remanded to the lower courts for a new trial, properly conducted to insure his due process rights are protected.

IT IS SO PRAYED.

## UNNOTARIZED OATH

I hereby certify under the penalty of perjury pursuant to Fla. Stat.s.92.525. that I have read the above and it is true and correct

*1-7-2000*
Date

*John Capelletti*
John Capelletti
#905604  MB # 013
Zephyrhills Correctional Institution
2739 Gall Blvd.
Zephyrhills, Fl. 33541-9701

## CERTIFICATE OF SERVICE

I hereby certify that a true and exact copy of the foregoing has been forwarded to the Office of the Attorney General, 110 SE 6th St., Ft. Lauderdale, Fl. 33301, by U.S. Mail this 7 day of January, 2000.

John Capelletti
John Capelletti

# *INDEX*

# *TO*

# *s.2254*

# *EXHIBITS*

1. Appellant's Initial Appeal Brief on Appeal      A

2. State's Answer Brief      B

3. Appellant's Reply Brief on Appeal      C

4. *Per curiam affirmed* decision Mandate by the Florida 4th DCA      D

5. Transcript pages      E

# *EXHIBIT   A*

# *APPELLANT'S INITIAL BRIEF*
# *ON APPEAL*

# IN THE DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA

## FOURTH DISTRICT

JOHN CAPELLETTI,    )
           )
   Appellant,   )
           )
vs.          )  CASE NO. 98-0879
           )
STATE OF FLORIDA,   )
           )
   Appellee.   )
_____)

## INITIAL BRIEF OF APPELLANT

On Appeal from the Circuit Court
of the  Judicial Circuit,
In and For  County, Florida
[Criminal Division].

RICHARD JORANDBY
Public Defender

SOPHIA LETTS
Assistant Public Defender
15th Judicial Circuit of Florida
Criminal Justice Building
421 Third Street/6th Floor
West Palm Beach, Florida 33401
(561) 355-7600

Attorney for John Capelletti

## <u>CERTIFICATE OF INTERESTED PERSONS</u>

Counsel for defendant/appellant certifies that the following persons and entities have or may have an interest in the outcome of this case.

Robert Butterworth, Attorney General
by Celia Terenzio, Chief, Assistant Attorney General
(Attorney for State/Appellee)

John W. Capelletti
(Defendant/Appellant)

Honorable James I. Cohn
17th Judicial Circuit Court Judge
(Presiding Judge)

Christopher Dambrosio
(Complaining witness)

Richard L. Jorandby, Public Defender, 15th Judicial Circuit
by Sophia Letts, Assistant Public Defender
(Attorney for Defendant/Appellant)

Michael J. Satz, State Attorney, 17th Judicial Circuit
by Justin Grosz, Assistant State Attorney
(Attorney for State)

Alan H. Schreiber, Public Defender, 17th Judicial Circuit
by Rene Dadowski, Assistant Public Defender
(Attorney for Defendant)

## TABLE OF CONTENTS

**PAGE**

CERTIFICATE OF INTERESTED PERSONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

AUTHORITIES CITED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE CASE AND FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

SUMMARY OF THE ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

### POINT I

THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION FOR
JUDGMENT OF ACQUITTAL BECAUSE THE CIRCUMSTANTIAL
EVIDENCE PRESENTED AT TRIAL WAS INSUFFICIENT TO SUSTAIN
APPELLANT'S CONVICTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

### POINT II

THE TRIAL COURT ERRED IN DENYING APPELLANT'S MULTIPLE
MOTIONS FOR MISTRIAL WHERE THE CUMULATIVE AFFECT OF THE
WITNESS' IMPROPER TESTIMONY WAS PREJUDICIAL TO APPELLANT
AND DENIED APPELLANT OF HIS RIGHT TO A FAIR TRIAL . . . . . . . . . . . 11

### POINT III

THE TRIAL COURT ERRED IN GRANTING THE UPWARD DEPARTURE
SENTENCE WHERE IT WAS NOT PROVEN THAT APPELLANT WAS THE
ONE WHO FIRED THE SHOTGUN AT THE VICTIM CAUSING THE RISK
OF DEATH OR GREAT BODILY HARM . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

# AUTHORITIES CITED

## CASES CITED

PAGE

*1-* Albright v. State, 378 So. 2d 1234
    (Fla. 2d DCA 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 34

*2* Barwick v. State, 660 So. 2d 685
    (Fla. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*3* Bates v. State, 422 So. 2d 1033
    (Fla. 3d DCA 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*4* Brown v. State, 672 So. 2d 648
    (Fla. 4th DCA 1996) ✗ . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 10

*5* Carter v. State, 332 So.2d 120
    (Fla.2d DCA 1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Chavez v. State, 702 So. 2d 1307
    (Fla. 2d DCA 1997) ✗ . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*2* Chenard v. State, 510 So. 2d 363
    (Fla. 3d DCA 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

*3* Cox v. Sate, 555 So. 2d 352
    (Fla. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 10

*4* Davis v. State, 90 So. 2d 629
    (Fla. 1956) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*5* Duest v. State, 462 So. 2d 446
    (Fla. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 34

✗ Gonzalez v. State, 538 So. 2d 1343
    (Fla. 4th DCA 1989) ✗ . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Gordon v. State, 704 So. 2d 107
    (Fla. 1997) ✗ . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

iv

*5* Grant v. State, 194 So. 2d 612
(Fla. 1967) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*4* Jaramillo v. State, 417 So. 2d 257
(Fla. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*2* Lewis v. State, 377 So. 2d 640
(Fla. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Long v. State, 689 So. 2d 1055
(Fla. 1997) ✗ . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8, 10

Marshall v. State, 600 So. 2d 474
(Fla. 3d DCA 1992) ✗ . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

*✳3* Perkins v. State, 349 So.2d 776
(Fla.2d DCA 1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*1 -* Perry v. State, 146 Fla. 187,
200 So. 525 (1941) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*2 -* Redish v. State, 525 So. 2d 928
(Fla. 1st DCA 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*3 -* Ryan v. State, 457 So. 2d 1084
(Fla. 4th DCA 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*4 -* Seaboard Air Line Railroad v. Strickland, 88 So. 2d 523
(Fla. 1956) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

*5.* Singletary v. State, 483 So.2d 8
(Fla. 2d DCA 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*6 -* State v. DiGuilio, 491 So. 2d 1129
(Fla. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 17, 34

*7 -* State v. Murray, 443 So. 2d 955
(Fla. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Terzado v. State, 232 So. 2d 232
(Fla. 4th DCA 1970) ✗ . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

v

<u>Waychoff v. State,</u> 624 So. 2d 392
    (Fla. 2d DCA 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

<u>West v. State,</u> 584 So. 2d 1044
    (Fla. 1st DCA 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

## PRELIMINARY STATEMENT

Appellant was the defendant and appellee the prosecution in the Criminal Division of the Circuit Court of the Seventeenth Judicial Circuit, In and For Broward County, Florida. In this brief the parties will be referred to as they appear before the Court.

The symbol "R" will denote the record on appeal, which consists of the relevant documents filed below.

The symbol "T" will denote the transcript.

1

## STATEMENT OF THE CASE AND FACTS

This is an appeal from a conviction for attempted murder in the first degree (R-32) and a departure sentence of thirty years with a credit of 268 days for time served (R-39-42).

Appellant and Christopher D'Ambrosio met around March of 1996 when D'Ambrosio was working on his wife's house, which was directly next to appellant's (T-245-246,345). D'Ambrosio paid appellant to help him paint the house and do other minor things and they "ended up forming a relationship" (T-248-249).

In February of 1997, D'Ambrosio, who was moving to Atlanta, Georgia, paid appellant to drive a truck to Georgia for him (T-249-250,372). Appellant and D'Ambrosio were scheduled to fly back to Florida after appellant arrived and they unloaded the truck, but they missed their flight (T-254). Later that night, they went to a gas station and while D'Ambrosio was pumping gas, appellant left the car and went towards the convenience store (T-254-255). After calling out appellant's name to no avail, D'Ambrosio left the gas station and did not see appellant again that night (T-255-256). D'Ambrosio flew to Florida the next day (T-257). Appellant was arrested that night and some time later called D'Ambrosio from jail, when D'Ambrosio was back in Florida, and told D'Ambrosio that appellant needed to post bond (T-257-258,374-375,398), but D'Ambrosio did not help appellant raise the bond (T-259).

On April 13, 1997, appellant and Edward Ruiz, who was driving Ruiz's small white Honda Civic hatchback, pulled up outside D'Ambrosio's house as D'Ambrosio was pulling out of his garage in his powerful Chevrolet Caprice Impala (T-262-263,265,300,323). According to D'Ambrosio appellant did not appear upset or angry, but wanted to talk to D'Ambrosio, who

2

was in a rush and told appellant they could talk at the gas station, so appellant and Ruiz followed him (T-263-264,304,308,381-382). There appellant asked D'Ambrosio why D'Ambrosio had left him in Georgia considering appellant had helped D'Ambrosio move furniture there (T-250,253,266-267,371-372,374). Appellant told D'Ambrosio that he owed appellant $160 for helping him move, but D'Ambrosio said he had already paid appellant (T-267). At this point, Ruiz got out of the driver's seat of his car and yelled out three separate times, "Are we going to do this or what?" (T-270,317,386). D'Ambrosio testified that appellant yelled, "I'm fuckin' going to blow your fuckin' head off, you hear me. I want you to know, mother fucker, I'm going to kill you" (T-272,320).

D'Ambrosio got back in his Chevrolet Impala and drove towards I-95 (T-272-273,388). Once on I-95 he saw Ruiz driving his white Honda Civic coming up from behind with appellant in the passenger seat (T-273,328). D'Ambrosio took some evasive action, but the traffic was heavy, and on three separate occasions Ruiz's car became parallel with D'Ambrosio's car (T-146-147,273,275,325-326). On the third occasion, D'Ambrosio felt a shot in the right side of his neck from a shotgun, but he did not see a shotgun come out of the car nor did he see a shotgun in appellant's hands (T-276-277,387,392). D'Ambrosio pulled off to the side of the road and called 911 with the help of D'Angelo Eiland (T-73,76-77,136,143,278).

During the course of the trial, appellant made numerous motions for mistrial because of D'Ambrosio's testimony which was disparaging to appellant's character and to appellant's defense function, all of which were denied (T-268,317-318,336-337,350-351,365-367,375,439-440,454-456,583). Appellant also moved for judgment of acquittal, which the trial court denied

3

(T-440-442,449,454-456).

The jury returned a verdict of guilty of attempted murder in the first degree on January 8, 1998 (T-576). The trial court gave appellant an upward departure sentence, over appellant's objection, of thirty years with a credit of 268 days for time served (T-589-590,596). The reason given for the upward departure was that the offense created a substantial risk of death of great bodily harm to many persons, or to one or more small children (T-592). Notice of appeal was timely filed (R-49).

## SUMMARY OF THE ARGUMENT

### POINT I

A prima facie case of circumstantial evidence must lead to a reasonable and moral certainty that the accused and no one else committed the offense charged. Where the evidence creates only a strong suspicion of guilt or simply a probability of guilt, the evidence is insufficient to sustain a conviction.

The state failed to adduce any evidence tending to prove that appellant pulled the trigger and actually shot D'Ambrosio. D'Ambrosio did not know who shot him and no one, not even D'Ambrosio, ever saw appellant with a shotgun that day. No shotgun was ever recovered nor was any fired shot shell recovered. There was no evidence linking appellant to any shotgun or a shot shell. Appellant was merely a passenger in the car, which was driven by Ruiz.

### POINT II

A witness' irrelevant, highly inflammatory, and gratuitous comments, innuendos and implications concerning the defendant's character serve only to highlight a defendant's character and divert the jury from the material evidence in issue. Here the cumulative effect of a D'Ambrosio's prejudicial comments resulted in fundamental prejudice and denied appellant his constitutional right to a fair trial before an impartial jury.

It was highly improper and prejudicial to appellant for D'Ambrosio to make comments regarding appellant's character, compare appellant to Terry Nichols, a convicted, well-known criminal in the Oklahoma City bombing, implying that appellant was of the same caliber as that criminal, comment on appellant's counsel's tactics and defense strategy, by attacking the

5

questioning techniques, accusing counsel of not putting words in context, and putting words in

D'Ambrosio's mouth, implying that the strategy and tactics were improper, and ask the jurors

to put themselves in D'Ambrosio's position. It cannot be said beyond a reasonable doubt that

appellant would have been convicted without the taint of the impermissible testimony. Because

of the scarce, circumstantial evidence presented at trial, appellant's acquittal was reasonably

within the realm of possibility. D'Ambrosio's comments were so prejudicial as to vitiate the

entire trial.

## **POINT III**

A departure sentence based upon extraordinary or egregious harm is reversible, where

another person struck the victim, and not the defendant. Here, since the verdict specifically

found appellant guilty only of the lesser included offense of attempted first degree murder and

did not find him guilty of attempted murder in the first degree with a firearm, this verdict is an

implicit finding that someone other than appellant had and fired the shotgun. Therefore, the trial

court erred in granting the upward departure.

## ARGUMENT

### POINT I

**THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION FOR JUDGMENT OF ACQUITTAL BECAUSE THE CIRCUMSTANTIAL EVIDENCE PRESENTED AT TRIAL WAS INSUFFICIENT TO SUSTAIN APPELLANT'S CONVICTION.**

The state bears the responsibility of proving a defendant's guilt beyond and to the exclusion of a reasonable doubt. Long v. State, 689 So. 2d 1055, 1057 (Fla. 1997) (citing Cox v. Sate, 555 So. 2d 352 (Fla. 1989)). See also Davis v. State, 90 So. 2d 629 (Fla. 1956). In circumstantial evidence cases, "a judgment of acquittal is appropriate if the State fails to present evidence from which the jury can exclude every reasonable hypothesis except that of guilt." Gordon v. State, 704 So. 2d 107, 112 (Fla. 1997) (citing Barwick v. State, 660 So. 2d 685, 694 (Fla. 1995)). At the outset, "the trial judge must first determine there is competent evidence from which the jury could infer guilt to the exclusion of all other inferences." Id. A jury's verdict on this issue must be reversed on appeal if the verdict is not supported by competent, substantial evidence. Long, 689 So. 2d at 1058.

A prima facie case of circumstantial evidence must lead to a "reasonable and moral certainty that the accused and no one else committed the offense charged." Brown v. State, 672 So. 2d 648 (Fla. 4th DCA 1996) (citing Davis v. State, 90 So. 2d 629 (Fla. 1956)). Where the evidence creates only a strong suspicion of guilt or simply a probability of guilt, the evidence is insufficient to sustain a conviction. Cox, 555 So. 2d 352 (Fla. 1989). See also Chavez v. State, 702 So. 2d 1307, 1308 (Fla. 2d DCA 1997). The facts must eliminate all reasonable

7

hypotheses of innocence. <u>Chavez</u>, 702 So. 2d at 1308. <u>See also</u> <u>Terzado v. State</u>, 232 So. 2d 232, 233 (Fla. 4th DCA 1970).

In <u>Long</u>, 689 So. 2d at 1058, a murder prosecution, the State introduced evidence that (1) in a collateral crime, Long abducted and then released Lisa McVey; (2) a search of Long's car, after he was arrested for abducting McVey, revealed two hairs consistent with that of the victim, Virginia Johnson; (3) a carpet fiber from the scene of the crime matched the carpet in Long's car; and (4) Long made vague statements to the effect that he had killed "others." The court felt that while the hair and fiber evidence in conjunction with the other evidence in the case certainly raised a very strong suspicion that Long killed the victim, the court found that it was insufficient to establish beyond a reasonable doubt that he did so. <u>Id.</u> The court found that no one saw Long with the victim, and that no statements were introduced in which Long stated that he killed the victim. <u>Id.</u> Further, the court found that the critical evidence linking Long to the murder, the two strands of hair and the carpet fiber, was not sufficient to support his conviction. <u>Id.</u>

Moreover, the court stated that even where evidence did produce a positive identification, such as fingerprints, the state must still introduce some other evidence to link a defendant to a crime. <u>See, e.g., Jaramillo v. State</u>, 417 So. 2d 257 (Fla. 1982) (where only evidence connecting defendant to crime was fact that defendant's fingerprints were left at scene, evidence insufficient to convict).

Here, there was inadequate proof of appellant's guilt. All the state presented was circumstantial evidence including a threat made by appellant that he was going to kill D'Ambrosio (T-272) and D'Ambrosio's statement to D'Angelo Eiland that it was appellant who

shot him (T-149). The state failed to adduce any evidence tending to prove that appellant actually pulled the trigger and actually shot D'Ambrosio. Even D'Ambrosio testified that he did not know who shot him (T-392). No one, not even D'Ambrosio, ever saw appellant with a shotgun that day or a shotgun in Ruiz's car (T-318-319,387,392). No shotgun was ever recovered nor was a fired shot shell recovered (T-202-203,229,429). There was no evidence linking appellant to any shotgun or a shot shell (T-232,429). Appellant was merely a passenger in the car, which was driven by Ruiz. There was no evidence to rebut appellant's position that Ruiz fired the shot. There were no witnesses who saw appellant commit the crime. There was also no evidence that appellant in any way aided and abetted Ruiz in the offense, he was just sitting in the car.

There was a reasonable hypothesis that appellant was just in the car that Ruiz was driving since no one actually saw who fired the shot and the state could not put the shotgun in appellant's hands. Nothing refutes appellant's hypothesis that appellant just happened to be present in the car and that Ruiz was the actual person who shot D'Ambrosio. A live shotgun shell, cardboard wads, led shot, and a plastic shot ring component were found in Ruiz's car and none of these items contained appellant's fingerprints (T-180-181,220-221,227,230-232,429). The firearms expert even testified that actual projectiles found in Ruiz's car led him to believe that at one time there had previously been a shot fired in Ruiz's car [prior to this incident] (T-433). This evidence and testimony implied that Ruiz owns a shotgun and was the person who fired the shot at D'Ambrosio. The state was not able to prove and exclude every reasonable hypothesis of innocence that appellant just happened to be there and that there was not an

9

independent act of Ruiz·shooting D'Ambrosio.

Here, there was even less evidence connecting appellant to the crime than in <u>Long</u>, <u>supra</u>, where the court found the evidence insufficient to support Long's conviction. The state could not say that no one else committed the offense. <u>Brown</u>. The evidence only created a strong suspicion of appellant's guilt and that evidence was insufficient to sustain appellant's conviction. <u>Cox</u>. Because the state was not able to exclude every reasonable hypothesis of innocence, the trial court erred in denying appellant's motion for judgment of acquittal. Therefore, this Court should reverse appellant's conviction.

## POINT II

**THE TRIAL COURT ERRED IN DENYING APPELLANT'S MULTIPLE MOTIONS FOR MISTRIAL WHERE THE CUMULATIVE AFFECT OF THE WITNESS' IMPROPER TESTIMONY WAS PREJUDICIAL TO APPELLANT AND DENIED APPELLANT OF HIS RIGHT TO A FAIR TRIAL.**

A mistrial is appropriate only when the error is so prejudicial as to vitiate the entire trial. Duest v. State, 462 So. 2d 446 (Fla. 1985). A defendant must establish that the alleged error seriously affected the fairness of his trial and that the trial court abused its discretion in denying the motion. West v. State, 584 So. 2d 1044, 1045 (Fla. 1st DCA 1991). When there is no reasonable possibility that the error contributed to the conviction, the error is harmless. State v. DiGuilio, 491 So. 2d 1129, 1135 (Fla. 1986).

In Albright v. State, 378 So. 2d 1234-1235 (Fla. 2d DCA 1979), the trial judge denied multiple motions for mistrial, yet gave many curative instructions to the jury and admonished the witnesses to stick to answering the questions and to stop volunteering information that was irrelevant. One witness testified that he started cutting himself after he met the defendant because it seemed like they both got off on doing it. Id. at 1234. The prosecutor asked the witness, "Isn't it a fact your life has been threatened concerning your testimony here today?" Id. at 1235. The trial court overruled the defendant's objection and denied his motion for mistrial, but told the jury to disregard the irrelevant testimony. Id. The other witness referred to the defendant as a "junkie," a "criminal," a "backstabber," and a "doublecrosser." Id. The Second District Court of Appeal found that the gratuitous comments by the witnesses were irrelevant and highly inflammatory innuendos and implications concerning the defendant's

11

character. Id. at 1235. The court pointed out that the testimony highlighted the defendant's character and diverted the jury from the material evidence in issue. Id. The court stated that the defendant had chosen to exercise his constitutional right not to testify and therefore did not place his character in issue. Id. See also Lewis v. State, 377 So. 2d 640 (Fla. 1979); Gonzalez v. State, 538 So. 2d 1343 (Fla. 4th DCA 1989) (it is fundamental that the prosection may not impugn the character of an accused unless the accused first puts character into issue at trial); Bates v. State, 422 So. 2d 1033 (Fla. 3d DCA 1982). Nevertheless, the court found that on numerous occasions, the state's witnesses had impermissibly and prominently injected the defendant's character into the trial. Id.

Furthermore, the Albright court held that the cumulative effect of the witnesses' comments resulted in fundamental prejudice and denied the defendant his constitutional right to a fair trial before an impartial jury. Id. More importantly, the court also held that this was so despite the laudable endeavors by the trial judge to pull the trial back on track and proceed with a fair trial by his curative instructions to the jury to disregard the testimony. Id. at 1235- 1236. The court found that on the record, the instructions by the trial judge could not cure the error. Id. at 1236 (citing Perry v. State, 146 Fla. 187, 200 So. 525 (1941)). The court continued saying that while a defendant is not entitled to an error-free trial, he may not be subjected to a trial where error is compounded by error. Id. (citing Perkins v. State, 349 So.2d 776 (Fla.2d DCA 1977)). The court held that since the defendant was denied his constitutional right to a fair trial he was entitled to a new trial. Id. (citing Carter v. State, 332 So.2d 120 (Fla.2d DCA 1976)).

12

Here, appellant moved for a mistrial based on the following improper characterizations

that the witness, D'Ambrosio, kept making about appellant (T- 268):

> MR. GROSZ [State Attorney]:      So there were times that he would do things
> or help you out around the house you would pay him x amount of dollars to have
> him help you out?
>
> D'AMBROSIO:      Yes,  In all fairness, it wasn't alot of help, but <u>he could
> smoke cigarettes and drink beer.  He's good entertainment</u>.
>
> MS. DADOWSKI [Appellant's attorney]:  Objection, Your Honor.
>
> COURT:      Sustained.  Please disregard the last response by the witness as
> being nonresponsive.
>
> D'AMBROSIO:      <u>I didn't intend to be derogatory</u>.

(T-248-249) (emphasis added).

> -----
>
> MR. GROSZ:      What happens at the gas station?
>
> D'AMBROSIO:      <u>John's a little lit before he gets to the gas station.  When I
> say lit</u>, I mean ---
>
> MS. DADOWSKI:    Objection, irrelevant.  Move to strike.
>
> COURT:      Sustained.  Sir, please couch your response to the questions.

(T-254) (emphasis added).

> ----
>
> D'AMBROSIO:      I said John, you know I didn't leave, you left yourself in
> Georgia.  He was basically trying to blame me, but he walking a line.  It was
> weird to understand what he was trying to say.  I was really hoping he would say,
> you know, <u>can I borrow $20's, you know, for his umpteen time and I would give
> it to him</u>.

(T- 266) (emphasis added).

----

D'AMBROSIO:    He was, in so many words, saying that <u>he had gotten</u> <u>arrested</u> at this gas station and when he ---

MS. DADOWSKI:    I object to this characterization.

D'AMBROSIO:    <u>Okay. You don't want to know what's happening then.</u>

(T-267) (emphasis added).

----

D'AMBROSIO:    And he never said no, you didn't pay me, but <u>he woke up</u> <u>and became conscious and he was in jail.</u>

MS. DADOWSKI:    Objection, Your Honor.

D'AMBROSIO:    <u>I'm telling you what's he's saying.</u>

COURT:    Hold on.

MS. DADOWSKI:    I move to strike. Can we have a side bar?

COURT:    Yes, ma'am.

(T-268) (emphasis added).

Appellant argued that all these improper characterizations had a cumulative affect and as a whole were prejudicial to appellant (T-268). The trial court responded: "That is precisely why I kept telling this witness from five minutes into his testimony to just answer the question and nothing more" (T-268). However, the trial court denied the motion because it did not find that the cumulative effect of the nonresponsive answers denied appellant a right to a fair trial (T-268).

14

When asked by the prosecutor, "Did you look like this before you saw John Capelletti and Eduardo Ruiz before April 13th of 1997?" D'Ambrosio answered, "No" (T-283). The trial court sustained appellant's objection (T-283); however, the answer was still heard by the jury and served only to prejudice them further. D'Ambrosio also made extraneous and irrelevant comments beyond the scope of the questions asked:

> MR. GROSZ:      And at some point, did you learn how much that bond was?
>
> D'AMBROSIO:    It varied. According to John it varied, but it depended on --
>
> MS. DADOWSKI:  I'll object to all this.
>
> COURT:      Sustained. Sir, listen to the question. The question calls for a yes or no response. Answer yes or no.

(T-258) (emphasis added).

----

> MR. GROSZ:      Is he passing up cars to catch up your vehicle at all?
>
> D'AMBROSIO:    He's doing somersaults.
>
> MS. DADOWSKI:  Objection, Judge.
>
> Mr. GROSZ:  He's not doing literally somersaults?
>
> D'AMBROSIO:    No --
>
> COURT:      Hold on, sir.
>
> MS. DADOWSKI:  Objection to the characterization of the words that the witness is using, somersaults.

(T-276) (emphasis added).

15

A little later D'Ambrosio again made an improper characterization about appellant (T-350). When answering appellant's question of whether D'Ambrosio had never really liked appellant, D'Ambrosio responded that he liked appellant; that he was a "great guy to play with, but <u>dangerous</u>" (T-350) (emphasis added). Even more erroneous, improper, and prejudicial was D'Ambrosio's reference to Terry Nichols (T-317). Specifically, D'Ambrosio said, "Not once, but at least -- at least two times, I believe it was more like three, yes, he [Ruiz] wanted to know if they [appellant and Ruiz] were going to go on with whatever it is they planned to do. Okay. <u>Terry Nichols wasn't even in Oklahoma</u> --" (T-317) (emphasis added). Appellant objected and again requested a mistrial, without success (T-317-318).

As in <u>Albright</u>, <u>supra</u>, all these prejudicial comments regarding appellant's character were irrelevant and highly inflammatory innuendos and implications concerning appellant's character, which was not at issue. Most particularly D'Ambrosio's reference to Terry Nichols, which eluded to the fact that appellant was similar to Terry Nichols implying that appellant was of the same caliber of person as Terry Nichols, clearly resulted in fundamental prejudice and denied appellant of his constitutional right to a fair trial before an impartial jury. The trial judge was obviously aware of D'Ambrosio's problem of not being able to simply answer the questions asked without adding prejudicial, irrelevant information (T-268). These comments seriously affected the fairness of appellant's trial.

In addition to D'Ambrosio's improper, remarks attacking appellant's character, he also made improper remarks to appellant's counsel, disparaging the defense function. Such remarks when made by the prosecutor can constitute reversible error when such remarks may have

prejudiced and influenced the jury into finding the defendant guilty. Grant v. State, 194 So. 2d 612 (Fla. 1967). See also Ryan v. State, 457 So. 2d 1084, 1086 (Fla. 4th DCA 1984). The Florida Supreme Court expounded upon this issue in State v. Murray, 443 So. 2d 955 (Fla. 1984). Justice Shaw, speaking for the Court stated: "Prosecutorial error alone does not warrant automatic reversal of a conviction unless the errors involved are so basic to a fair trial that they can never be treated as harmless." Murray, 443 So. 2d 955. A prosecution's personal attack on defense counsel by referring to his "cheap tricks" was found to be clearly beyond the bounds of proper closing argument in Redish v. State, 525 So. 2d 928, 931 (Fla. 1st DCA 1988), because the improper statements to the jury created improper prejudice to the defendant. The Redish court stated that however probable in light of the evidence it may have been that the defendant would have been convicted had the prosecutor not made the statements to the jury, it could not say that in this case acquittal was not reasonably within the realm of possibility. 525 So. 2d at 931 (citing Singletary v. State, 483 So.2d 8, 9 (Fla. 2d DCA 1985)). The court concluded that it could not be said beyond a reasonable doubt that the defendant would have been convicted without the taint of the impermissible remarks made to the jury. Id. See State v. DiGuilio, 491 So.2d 1129 (Fla. 1986).

Although the following statements were made by D'Ambrosio and not the prosecutor, their derogatory nature created the same prejudicial effect and may have influenced the jury in finding appellant guilty:

MR. FLEISCHMAN [Co-Defendant's Attorney]: Okay. So when you referred to Edward Ruiz as a monkey on August 25th of 1997 when I questioned you regarding this incident, that was done in a light favorable to Mr. Ruiz, is that what

17

you're saying, Mr. D'Ambrosio?

D'AMBROSIO:    That was done in the context as you would imagine in my shoes.  If God forbid if the opportunity ever comes that individuals are out in society and shoot you or participate or conspire to kill you, or assassinate you, I can assure you, you will feel the same derogatory feelings towards that individual. You would probably not refer to him as a good individual, so you may use a word that is derogatory.

MR. FLEISCHMAN:        Okay.

D'AMBROSIO:    It was an inappropriate and derogatory word.  As is was inappropriate of suggesting that somehow I don't know someone, yet I dislike them.  So it was an inappropriate word used at an emotional time during an interrogation of which I was really initially trying to tell people what happened and then they play an attorney game with you where they start flipping and dig and, you know, changing and putting words in your mouth.  So I did use the word monkey inappropriately.

MR. FLEISCHMAN:        Okay.  And Mr. D'Ambrosio, just so it's clear, I did not put the word monkey in your mouth, did I?

D'AMBROSIO:    The word monkey he did not put in my mouth.  He used countless words that you did put in my mouth.  And if you give me that deposition back, I will be glad to show you.

MR. FLEISCHMAN:        Mr. Ruiz is not a monkey, is he?

D'AMBROSIO:    No.  But you were a voice on the phone.

MR. FLEISCHMAN:        I am not a monkey, am I?

D'AMBROSIO:    I am not suggesting-- never made the suggestion. But I can appreciate your desperation in this case.

(T-297-298) (emphasis added).

----

MR. FLEISCHMAN:        Now, Mr. D'Ambrosio, the only person, again, that you were involved regarding this Georgia incident was Mr. Capelletti, the only --

18

out of the people that are sitting here today, is Mr. Capelletti and yourself, isn't that true?

D'AMBROSIO:    Georgia wasn't an incident for me.  It wasn't an incident Georgia for me.

MR. FLEISCHMAN:    I am not asking you that.

D'AMBROSIO:    You called Georgia an incident, did you not, counsel?

MR. FLEISCHMAN:    The employment situation with the assisting you to move to Georgia was between yourself and Mr. Capelletti, right?

D'AMBROSIO:    Yes.

(T-298-299) (emphasis added).

----

MR. FLEISCHMAN:    Okay, I'm going to be referring to Page 68 and 69, beginning at Lines 22 through 25.  On that page and then Page of 69, 1 through 17.  If you just read that please.

D'AMBROSIO:    So you want me to read it so that jury can hear it?

MR. FLEISCHMAN:    Read it to yourself and let me know when you are done.

D'AMBROSIO:    Give me that again, what am I supposed to read?

MR. FLEISCHMAN:    Yes, starting at Page 68.  Let me show --

D'AMBROSIO:    If you give it to the jury, they can read it too rather than put a spin it on.  Rather than say something here or there.  They can read it themselves.

MR. FLEISCHMAN:    I understand.  Ready?  68 starting at Lines 22 through 25 page 69, Lines 1 through 17.

D'AMBROSIO:    So we won't be in context, correct?  Okay.  Your words, counsel.  Your words, not my words.  So you said question --

19

MR. FLEISCHMAN:        Mr. D'Ambrosio, I'm just asking --

D'AMBROSIO:        They're your words.

MR. FLEISCHMAN:        Let you explain.

COURT:        Hold on.

MR. FLEISCHMAN:        Judge --

COURT:        Hold on.  Listen to the question.  Respond to the question and to the question only.

D'AMBROSIO:        Yes, sir.

(T-305-306) (emphasis added).

----

MR. FLEISCHMAN:        Mr. D'Ambrosio, I'll start at Page 68, Line 22 through 25.  Do you recall being asked this question and giving this answer. Question: "Then you drove to the Amoco Station, did you tell them come on and follow me and I'll talk to you some more at the Amoco Station?"
          Answer: "Basically I certainly implied that, yes.  There was a clear implication of that."
          That's what you said isn't it?

D'AMBROSIO:        I responded to that question.  The answer is yes, I responded to the words that you selected.

MR. FLEISCHMAN:        And I didn't select your answer though, did I, Mr. D'Ambrosio?

D'AMBROSIO:        I don't believe you selected my answer, no.  I have no reason to believe that.

MR. FLEISCHMAN:        Okay.  Now, after the incident happens and you're taken to the hospital, and I already asked you if you recall giving this statement to Detective Needs and you said, well, you felt -- you felt a little unsure about it because of your condition at the time, is that right?

20

D'AMBROSIO:﹍    I didn't use them words.  Now, this is again an exemplary example.  I didn't use those words, they're your words.

MR. FLEISCHMAN:        You're right.  You tell me the words why it was that you're not so sure that you remember giving this statement?

D'AMBROSIO:    Let's make it appropriate.  Let's ask the stenographer to give us the word.

MR. FLEISCHMAN:        Judge --

COURT:    Sustained.

MR. FLEISCHMAN:        I'm going to object and just ask that he be directed to answer the question.

COURT:    All you have to do, Mr. D'Ambrosio, is listen to the question and respond to the question and nothing else.  The question calls for a yes or no response.  If you need to explain your answer, let me know and we'll give you an opportunity explain.

(T-308-310) (emphasis added).

----

D'AMBROSIO:    ...I think the most fair thing to do is give you all the material rather than put all this spin on it and try to cut it up where you get a certain piece and you really don't get the whole picture.  And you told me use my words.

MR. FLEISCHMAN:        I'm going to object to that portion of his answer as far as that there's spin put on anything.  It's totally nonresponsive.

COURT:    Okay.  As to that portion of the response, the Court agrees that it is nonresponsive and motion to strike is granted.

(T-310-311) (emphasis added).

----

MR. FLEISCHMAN:        And in your statement to Detective Needs, you're actually very detailed, aren't you, Mr. D'Ambrosio?  You would have to admit

21

with that?

D'AMBROSIO:    I tried to be detailed, you know.  I mean, if someone's asking a question, I tried to answer it.  <u>There was nobody there stopping me or correcting me, or curtailing it, or putting a spin on it.</u>

MS DADOWSKI:    Objection, Your Honor.  Nonresponsive.

COURT:    Sustained.

(T-315-316) (emphasis added).

----

MR. FLEISCHMAN:        You want to see your statement, Mr. D'Ambrosio?

D'AMBROSIO:    <u>Gees, I would have sworn I said that a few times here. Didn't I ask you a few times</u> --

MR. FLEISCHMAN:        Do you want to read your 11 Pages?

D'AMBROSIO:    I want to -- <u>If you're telling me I said something that I didn't say, of course I want to see it.</u>

MR. FLEISCHMAN:        Your Honor, may I approach the witness?

COURT:    Yes.

D'AMBROSIO:    Can you help me here.  Sid, can you show me what you're talking about rather than -- Don't hand me a lot of pages here, come over here and tell me what you're talking about.

MR. FLEISCHMAN:        Is it there anywhere?

D'AMBROSIO:    You said that to me.

MR. FLEISCHMAN:        I'll tell you it isn't in here.

D'AMBROSIO:    <u>Did you catch that!  What a razzle-dazzle that was.  What's that?  If it ain't here, it ain't here.  You got that?  Okay.  If it ain't here, it ain't here.  What was that?</u>

22

> MR. FLEISCHMAN:        Judge, I'm --
>
> COURT:      Sir, I don't have to have to tell you this again.  Do you know what the rules are?  Do you, sir?
>
> D'AMBROSIO:      Yes.
>
> COURT:      I expect you to follow the rules.

(T-322-323) (emphasis added).

D'Ambrosio also improperly commented on how the attorneys had come up with an outrageous proposition: "I have no reason to believe that somebody else could have grabbed the wheel as was suggested by someone at deposition.  They come up with outrageous proposition" (T-328) (emphasis added).  Then again D'Ambrosio continued to make extraneous, irrelevant comments:

> MR. FLEISCHMAN:        Okay.  Now, Mr. D'Ambrosio, let me start with this, in July of '94 you were placed on felony probation for a count of stalking and count of resisting arrest without violence, you were given three years probation?
>
> D'AMBROSIO:      I think we've gone over that, yes.
>
> MR. FLEISCHMAN:        Well --
>
> COURT:      Sir, he didn't ask you whether or not you had gone over it.  Just answer the question, okay.
>
> D'AMBROSIO:      Yes, sir.
>
> COURT:      It's the last time that I'm going to tell you.  Just answer the question.

(T-329-330) (emphasis added).

        ----

23

MR. FLEISCHMAN:        Okay. Then in July of 1997, you appeared before another judge and you filed a motion to terminate your probation, right, you remember that?

D'AMBROSIO:        Yes, I remember that....
......

D'AMBROSIO:        I had an attorney take the motion to court. That's the only --

MR. FLEISCHMAN:        All right. There's nothing wrong with that. I'm saying you had an attorney?

D'AMBROSIO:        It has nothing to do with this. <u>The conversation is wrong, but if we want to talk about that, let's talk about it. I don't want to talk about this case either if I were in your shoes</u>.

MR. FLEISCHMAN:        Judge, I'm going to --

(T-333-334) (emphasis added). After these remarks were made, the trial judge excused the jury in order to reprimand D'Ambrosio (T-334-336). The trial court told D'Ambrosio:

> The defendants have a right to a fair trial. When one of the defense lawyers asks you a question, just respond to the question. Don't add your spin to it and say if I were in your shoes, you know, I would feel this way. He didn't ask you how you would feel if he was -- if you were in his shoes. Do you understand that? ... He's representing his client as best he can. And you're not to comment on the manner in which he is representing his client in front of the jury, do you understand that?...We could be here until midnight at the rate we're going. Just listen to the question and respond to the question and nothing else....None of these other comments about your opinion of the question or the questioner, do you understand that? Do you? ...So I'm warning you, sir, just listen to the question and respond to the question only.

(T-335-336). The trial judge finished by saying that he <u>really did not want to see a mistrial at this stage, but at the rate D'Ambrosio was going, things were starting to accumulate</u> (T-336) (emphasis added). Appellant then renewed his motion for mistrial, without success (T-337).

Despite the trial court's warnings, D'Ambrosio's comments continued:

24

MR. FLEISCHMAN:        Okay. Well, would you like me to show you a written motion, if that would refresh your recollection? Again, I don't want to be misleading.

MR. D'AMBROSIO:        Here we go again. I didn't make a motion. If my attorney made a motion -- I didn't -- Christopher D'Ambrosio did not make a motion. I'm sorry, but you -- you walked right into it.

MS. DADOWSKI:    Objection, Your Honor.

COURT:        Sustained. Sir, no comments regarding the question, do you understand that?

(T-342-343) (emphasis added).

----

MS. DADOWSKI:    And basically your opinion of Mr. Capelletti is that he's a low life, is that correct?

MR. D'AMBROSIO:        I don't make opinions of other people like that.

MS. DADOWSKI:    Now, do you recall giving a deposition to me in Atlanta, Georgia on August 25th of 1997?

MR. D'AMBROSIO:        Within reason I recall it.

MS. DADOWSKI:    All right. Let me direct you to Page 70, Line 14. I just ask you if that refreshes your memory?

MR. D'AMBROSIO:        Which part, where I said if he didn't shoot me.

MS. DADOWSKI:    No, where you say this is low life guy?

MR. D'AMBROSIO:        If I say, if he didn't shot me.

MS. DADOWSKI:    Okay. You called him a low life, is that correct?

MR. D'AMBROSIO:        In context it's not correct.

.....

25

MS. DADOWSKI:   Now, did you call him a low life in Line 11 through 20 somewhere in there where you say, but he's a low life? What's the question that was asked to you?

MR. D'AMBROSIO:        Woe, woe, excuse me, time out, slow down, slow down. You approached first. Let me read it.

MS. DADOWSKI:   You gave it back to me. I assumed you read it.

MR. D'AMBROSIO:        Well, when you say low life, let me read it.

MS. DADOWSKI:   You said where he's a low life?

MR. D'AMBROSIO:        You take it out of context, give it to the jury.

MS. DADOWSKI:   My question to you --

MR. D'AMBROSIO:        Give it to the jury. Let them see it.

(T-346-348) (emphasis added). At this point, the trial judge had had enough and admonished

D'Ambrosio this time for questioning the way appellant was asking questions. The judge stated:

Sir, she's asking the question. You have to respond. I don't want to tell you again....[S]ir, she's going to ask the question the way she wants to ask....[S]ir, you cannot speak right now, sir. You merely answer the question....We have a way of doing things in court and it's not predicated on the way you want to do things.

(T-348-349) (emphasis added).

D'Ambrosio again made another disparaging character comment regarding appellant after

appellant's counsel read a portion of D'Ambrosio's deposition:

MS. DADOWSKI:   "You lose your head because you've got something to lose. Well, that's how John was, like a kid, you know. And so I wasn't effective, he didn't get things done. I get things done. So the point I'm going to make is, so I hired him -- not hired him, but like he would do things."

D'AMBROSIO:        That's correct, I said that. Actions speak louder than words.

26

And--

COURT:        Sir, the answer is yes.  Nothing else.

D'AMBROSIO:        Yes.

MS. DADOWSKI:    Your Honor, I'm going to object again.

(T-350) (emphasis added).  In response to appellant's question, "But you never really liked John

Capelletti, is that right?", D'Ambrosio further stated:

D'AMBROSIO:        No, I liked John Capelletti.  I liked John Capelletti.  Great
guy to play with, but dangerous.

MS. DADOWSKI:    Objection, Your Honor.

D'AMBROSIO:        You asked me the question.

(T-350) (emphasis added).  And at this point, the trial judge, for the second time, excused the

jury to reprimand D'Ambrosio (T-351).  The trial judge said, "I'm getting real close to granting

a mistrial in this case, which means we have to start all over, sir, do you understand that?...

You're embellishing, your putting your own extra spin on things" (T-351) (emphasis added).

Not much later D'Ambrosio again attacked appellant's questioning tactics regarding

D'Ambrosio's deposition:

D'AMBROSIO:        A lot was isolated in the sentence you pointed out because
you didn't want it in context.

MS. DADOWSKI:    I'm going to object.  Move to strike.

COURT:        Sustained.  Please disregard the last comment by the witness.

MS. DADOWSKI:    In fact, you testified that when you had money, you rolled
it, didn't you?

27

D'AMBROSIO:    Yeah, I sometimes like to roll it.

MS. DADOWSKI:    And that's what you meant, you just roll the money?

D'AMBROSIO:    I don't know was it in context, was there a whole paragraph to be read or is there an isolated word again, counsel?

MS. DADOWSKI:    Your Honor, may I approach?

COURT:    Yes.

...

MS. DADOWSKI:    Your Honor, can we have a side bar?  I have an objection and I'd like to have a side bar if I could.

COURT:    All right.

(T-364-365) (emphasis added).  At side bar, appellant argued that there was a problem with

D'Ambrosio who kept testifying that appellant did not want D'Ambrosio's responses in context

(T-364-365).  Appellant pointed out that the problem with putting things in context was that

D'Ambrosio kept rambling on as evidenced by his testimony (T-365).  Appellant noted that if

the whole line of a deposition was read, there was a very good chance that there would be three

or four answers in that particular paragraph that have nothing to do with the question being asked

(T-365).  Appellant especially objected to D'Ambrosio's telling appellant to put things in context

because it was highly improper and it implied that appellant was doing something improper (T-

365).

The trial court believed that the defense was somewhat handicapped by the manner in

which D'Ambrosio responded to questions and comments, and continued to comment on the

manner of interrogation and the trial court agreed this was not proper (T-366-367).  However,

28

the trial court denied appellant's motion for mistrial (T-367). Despite all the admonishments

from the trial court, D'Ambrosio continued to comment on the questions without responding to

them:

MS. DADOWSKI:    Page 67, Lines 1 through 4.

D'AMBROSIO:    There's a lot in them four lines.

MS. DADOWSKI:    "In other words, what I'm saying, I don't know the guy.
And if I had any choice. I wouldn't have wanted to know the guy. He's not a guy
that I would like to talk with, this guy."

D'AMBROSIO:    That's part of them four lines.

MS. DADOWSKI:    That's exactly those four lines.  Is that not exactly what is
in those four lines?

D'AMBROSIO:    Let me see it again. "In other words, what I am saying is",
right.

MS. DADOWSKI:    That's exactly --

D'AMBROSIO:    "In other words, what I'm saying, I didn't know the guy.
If I had any choice, I wouldn't have wanted to know the guy.  He's not the guy
I would like to talk with, this guy."

MS. DADOWSKI:    And is that the exact words you said?

D'AMBROSIO:    Yes, that's the words on the deposition, yes, it is.

MS. DADOWSKI:    In fact, you felt that Capelletti's aren't your people, is that
correct?

D'AMBROSIO:    I don't recall -- Let's go down this road again. Take a look,
okay. Am I isolated now --

MS. DADOWSKI:    Yes, you are.

D'AMBROSIO:    Not even a line.

29

MS. DADOWSKI:    You are --

D'AMBROSIO:    The words. In that paragraph --

MS. DADOWSKI:    Page 66, Line 11 and 12.

D'AMBROSIO:    Lines 11 -- It's not even a whole sentence, but okay. If you want to isolate it.

MS. DADOWSKI:    Your Honor, I have another objection. Can we move side bar?

COURT:    No, ma'am. The objection is sustained. Sir, don't comment on the question. Just respond to the question.

(T-370-371) (emphasis added).

----

MS. DADOWSKI:    When Mr. Capelletti called you from Georgia, he never made you feel or told you that you would be responsible and that you should bail him out, is that correct?

D'AMBROSIO:    I guess one could say, but he asked for help. He asked for help in whatever capacity --

MS. DADOWSKI:    He didn't feel that you were responsible, is that correct?

D'AMBROSIO:    I can't tell you his feelings. I can tell you about words.

MS. DADOWSKI:    Have you ever give --

D'AMBROSIO:    Some cases -- Wait a minute, you asked me about words. Then when I go into a little bit more than words, you can't have it both ways.

MS. DADOWSKI:    Objection, Your Honor.

COURT:    Sustained. Sir --

MS. DADOWSKI:    Same motion.

30

COURT:    <u>No comments on your thoughts regarding the question. Just answer the question, sir</u>. Motion is hereby denied.

(T-374-375) (emphasis added).

D'Ambrosio's improper statements regarding appellant's counsel's tactics in front of the jury created improper prejudice to appellant. Even the trial judge warned D'Ambrosio several times that D'Ambrosio's testimony and extraneous comments were beginning to accumulate towards his granting a mistrial (T-336,351). Between the erroneous comments on appellant's character, most particularly the Terry Nichols reference, and the impermissible statements regarding appellant's counsel, these errors are not harmless because they are basic to appellant's right to a fair trial. <u>Murray</u>. It cannot be said beyond a reasonable doubt that appellant would have been convicted without the taint of the impermissible testimony. <u>Redish</u>.

Despite the trial judge's countless admonishments, D'Ambrosio's improper testimony and extraneous comments continued:

MS. DADOWSKI:    When you first see Mr. Capelletti, he does not appear upset with you or angry?

MR. GROSZ:    I'm sorry on which date?

MS. DADOWSKI:    April 13th of 1997?

D'AMBROSIO:    He didn't appear extremely angry. <u>I don't know -- it wasn't too much of an account, or is that the wrong answer?</u> Here we go.

MS. DADOWSKI:    Let me refer you to Line -- Page 32, Line 14 through 16. And <u>the only answer I'm concerned with is your answer on Page 16 -- Line 16</u>.

D'AMBROSIO:    Didn't appear happy.

MS. DADOWSKI:    <u>The question is: "Did Capelletti appear upset with you or</u>

31

<u>angry?  Answer: "No."</u>

D'AMBROSIO:        <u>No, that's not the answer</u>.

MS. DADOWSKI:        Your Honor, can I have a side bar.  I'd definitely need a side bar on this one.

D'AMBROSIO:        Look at the answer.

(T-378-379) (emphasis added).  At side bar, the following occurred:

MS. DADOWSKI:   Whenever he says I don't recall and I have him read it, <u>he wants to continue to read the information, so he wants to read the fact that he [appellant] didn't appear happy, he appeared cooked</u>.

COURT:        Don't show it to him.  Ask him do you recall this question and this answer.

MS. DADOWSKI:   When he says no, impeach him with that without showing it to him?

COURT:        Sure.

MR. GROSZ:        Judge, I mean, any witness should be entitled to, if he doesn't recall, at least to be able to read it.

COURT:        There's nothing that says that -- Well, if he says he doesn't recall it.

MS. DADOWSKI:   That's the problem.  That is what he's saying.  I have to show it to him and then <u>he insists on improperly getting into evidence that's not admissible....I didn't ask him whether my client appeared cooked.  I asked him did he appear upset or angry.  The first answer he gave was no.  And then he continues in that answer to say [he] didn't appear happy, appeared cooked</u>.  I don't want to bring in that information.  <u>That's the dilemma that I keep getting into</u>.

(T-380-381) (emphasis added).  Only moments later, D'Ambrosio made additional extraneous

comments:

MS. DADOWSKI:   You could have eaten Mr. Ruiz's car off the road, couldn't

you?

D'AMBROSIO:    <u>I don't eat cars</u>.

MS. DADOWSKI:    Didn't you use those words on Page 112, lin 16, 17 where you say: "I mean, I could have eaten him off the road.  He has little piece of shit."

D'AMBROSIO:    I don't know, let me see.

MS. DADOWSKI:    Did you say that, sir?

D'AMBROSIO:    <u>Not quite.  Certainly don't want that page read</u>.

MS. DADOWSKI:    Objection, Your Honor.

COURT:    Sustained, <u>Sir, how many time did I tell you, no extraneous comments</u>.

(T-391) (emphasis added).

After the state rested, appellant renewed his multiple motions for mistrial, and again, the trial court denied appellant's motion finding that the cumulative affect of D'Ambrosio's conduct did not rise to the level of depriving appellant of the right to a fair trial (T-439-440).  After the verdict was rendered, appellant again renewed his request for a mistrial, without success (T-583).

By the end of the trial, it was quite clear that even the trial judge had had enough of D'Ambrosio.  D'Ambrosio wanted to be heard at sentencing and the trial court simply stated, "I've heard everything I think I needed to hear from Mr. D'Ambrosio....I think I know what his sentiments are, let me put it like that" (T-581).

It was highly improper and prejudicial to appellant for D'Ambrosio to (1) make comments regarding appellant's character, (2) compare appellant to Terry Nichols, a convicted,

33

well-known criminal in the Oklahoma City bombing, implying that appellant was of the same caliber person, (3) comment on appellant's defense strategy and appellant's counsel's tactics by attacking the questioning techniques, accusing counsel of not putting words in context, and putting words in D'Ambrosio's mouth, implying that the strategy and tactics were improper, and (4) ask the jurors to put themselves in D'Ambrosio's position. There is no way that the prejudicial testimony's taint could be erased from the minds of the jurors. The testimony had the effect of "gravely impairing a calm and dispassionate consideration of the evidence and the merits by the jury." Seaboard Air Line Railroad v. Strickland, 88 So. 2d 523 (Fla. 1956). The trial court's cautionary instructions were insufficient to overcome the incurable effect of D'Ambrosio's numerous prejudicial comments that occurred throughout the trial.

Because of the scarce, circumstantial evidence presented at trial, it cannot be said that acquittal was not reasonably within the realm of possibility. D'Ambrosio's prejudicial comments clearly contributed to appellant's conviction. DiGuilio. The continual improper, prejudicial, extraneous comments were irrelevant and served no purpose but to prejudice the jury against appellant. Appellant should not be subjected to a trial where error is compounded by error. Albright. D'Ambrosio's improper testimony was so prejudicial that it vitiated the entire trial and the trial court abused its discretion by denying the multiple motions for mistrial which should have been granted. Duest. Appellant was denied his right to a fair trial; therefore, this Court should reverse his conviction and remand this case for a new trial.

34

## POINT III

**THE TRIAL COURT ERRED IN GRANTING THE UPWARD DEPARTURE SENTENCE WHERE IT WAS NOT PROVEN THAT APPELLANT WAS THE ONE WHO FIRED THE SHOTGUN AT THE VICTIM CAUSING THE RISK OF DEATH OR GREAT BODILY HARM.**

When the trial court was considering the possible aggravator of risk of death or great bodily harm, appellant argued that it did not apply to appellant because there was no evidence whatsoever that appellant was the person who fired the shotgun on the highway (T-589-592).

A departure sentence based upon extraordinary or egregious harm was reversed where another perpetrator struck the victim, and not the defendant. Marshall v. State, 600 So. 2d 474 (Fla. 3d DCA 1992). See also Waychoff v. State, 624 So. 2d 392 (Fla. 2d DCA 1993) (Sentence reversed where insufficient evidence found to support that the egregious nature and the excessive brutality of the beatings were caused by the defendant rather than the co-defendants); Chenard v. State, 510 So. 2d 363 (Fla. 3d DCA 1987) (departure based upon unfactored pattern of violence invalid where co-defendant, not defendant, was solely responsible for the assault).

There was no proof that appellant had anything to do with the creation of the risk of bodily harm or death. Since the verdict specifically found appellant guilty only of the lesser included offense of attempted first degree murder and did not find him guilty of attempted murder in the first degree with a firearm (R-31), this verdict is an implicit finding that someone other than appellant had and fired the shotgun. Appellant was merely present at the time of the incident. There was no evidence to establish that appellant put anybody at risk of harm in any way.

35

Because there was no evidence that appellant was the one who fired the shotgun, and thus, created a risk of death or great bodily harm, this Court should remand this cause for resentencing.

## CONCLUSION

Based upon the foregoing argument and the authorities cited therein, appellant respectfully requests this Honorable Court to reverse and remand this cause for a new trial.

Respectfully submitted,

RICHARD JORANDBY
Public Defender
15th Judicial Circuit of Florida
Criminal Justice Building
421 Third Street/6th Floor
West Palm Beach, Florida 33401
(561) 355-7600


SOPHIA LETTS
Assistant Public Defender
Florida Bar No. 116440

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy hereof has been furnished to Celia Terenzio, Assistant Attorney General, 1655 Palm Beach Lakes Blvd., Third Floor, West Palm Beach, Florida 33401 by courier this _13th_ day of June, 1998.


Attorney for John Capelletti

37

# EXHIBIT   B

# STATE'S ANSWER BRIEF ON APPEAL

IN THE DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

CASE NO. 98-0879

JOHN CAPELLETTI,
Appellant,

vs.

STATE OF FLORIDA,
Appellee.



RECEIVED
SEP 4 1998
PUBLIC DEFENDER'S OFFICE
APPELLATE DIVISION
15th JUDICIAL CIRCUIT

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
ON APPEAL FROM THE CIRCUIT COURT OF THE 17TH JUDICIAL CIRCUIT, IN
AND FOR BROWARD COUNTY, FLORIDA, (Criminal Division)
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

ANSWER BRIEF OF APPELLEE

ROBERT A. BUTTERWORTH
Attorney General
Tallahassee, Florida


ETTIE FEISTMANN
Assistant Attorney General
Florida Bar No. 892830
1655 Palm Beach Lakes Boulevard
Suite 300
West Palm Beach, FL 33401-2299
Telephone: (561) 688-7759

Counsel for Appellee

CASE NO. 98-0879

John Capelletti v. State Of Florida

CERTIFICATE OF INTERESTED PERSONS

Counsel for the State of Florida, appellee herein, certifies that the following additional persons or entities have or may have an interest in the outcome of this case.

Ettie Feistmann, Assistant Attorney General
(Appellate counsel for the State of Florida, Appellee)

## TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS . . . . . . . . . . . . . . . . I

TABLE OF AUTHORITIES  . . . . . . . . . . . . . . . . . . . . . ii

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE CASE AND FACTS . . . . . . . . . . . . . . . . 2

SUMMARY OF THE ARGUMENT . . . . . . . . . . . . . . . . . . . . 6

ARGUMENT  . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
     I.  THE TRIAL COURT DID NOT ABUSE ITS DISCRETION IN
     DENYING APPELLANT'S MOTION FOR A JUDGMENT OF
     ACQUITTAL WHERE THE STATE PRESENTED COMPETENT
     SUBSTANTIAL EVIDENCE TO SUPPORT THE VERDICT OF
     ATTEMPTED FIRST DEGREE MURDER WHERE APPELLANT WAS A
     PRINCIPAL.
     . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

     II.  THE TRIAL COURT DID NOT ABUSE ITS
     DISCRETION IN DENYING APPELLANT'S MOTIONS FOR
     MISTRIAL WHERE THE STATE WITNESS WAS NON-
     RESPONSIVE. . . . . . . . . . . . . . . . . . . . . . 17

     III. THE TRIAL COURT DID NOT ABUSE ITS DISCRETION
     IN SENTENCING APPELLANT BECAUSE THE REASON FOR THE
     UPWARD DEPARTURE SENTENCE IS SUPPORTED BY THE
     RECORD. . . . . . . . . . . . . . . . . . . . . . . . 35

CONCLUSION  . . . . . . . . . . . . . . . . . . . . . . . . . . 38

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . 38

TABLE OF AUTHORITIES

### FEDERAL CASES

United States v. Acevedo, 141 F.3d 1421 (11th Cir. 1998) . 18

### STATE CASES

A.B.G. v. State, 586 So. 2d 445 (Fla. 1st DCA 1991), dismissed, 605 So. 2d 1261 (Fla. 1992) . . . . . . . . . . . . . . . 8

Barwick v. State, 660 So. 2d 685 (Fla. 1995) . . . . . . . . 7

Bedford v. State, 589 So. 2d 245 (Fla. 1991), cert. denied, 503 U.S. 1009 (1992) . . . . . . . . . . . . . . . . . . 17

Booker v. State, 514 So. 2d 1079 (Fla. 1987) . . . . . . . 18

Breedlove v. State, 413 So. 2d 1 (Fla.), cert. denied, 459 U.S. 882, 103 S. Ct. 184, 74 L. Ed. 2d 149 (1982) . . . . . . . 17

Brewer v. State, 413 So. 2d 1217 (Fla. 5th DCA 1982), rev. denied, 426 So. 2d 25 (Fla. 1983) . . . . . . . . . . . . . . . . 9

Briggs v. State, 455 So. 2d 519 (Fla. 1st DCA 1984) . . . . 34

Buenoano v. State, 527 So. 2d 194 (Fla. 1986) . . . . . . . 17

Busch v. State, 466 So. 2d 1073 (Fla. 3d DCA 1984) . . . . . 9

C.N.W. v. State, 670 So. 2d 1052 (Fla. 2d DCA 1996) . . . 15

Canakaris v. Canakaris, 382 So. 2d 1197 (Fla. 1980) . . . . 18

Clark v. State, 379 So. 2d 97 (Fla. 1979) . . . . . . . . . 7

Duest v. State, 462 So. 2d 446 (Fla. 1985) . . . . . . . . . 18

Erickson v. State, 565 So. 2d 328 (Fla. 4th DCA 1990) . . . 23

Ferguson v. State, 417 So. 2d 639 (Fla. 1982) . . . . . . . 18

Finney v. State, 660 So. 2d 674 (Fla. 1995) . . . . . . . . 17

Ford v. State, 592 So. 2d 348 (Fla. 2d DCA 1992) . . . . . . 10

Gorby v. State, 630 So. 2d 544 (Fla. 1993), cert. denied, 115 S. Ct. 99, 63 U.S.L.W. 3259 (U.S.Fla. Oct. 3, 1994) . . . . . 17

Harmon v. State, 527 So. 2d 182 (Fla. 1988)  . . . . . (3) . 18

Henderson v. State, 679 So. 2d 805 (Fla. 3d DCA 1996)(4) affirmed, 698 So. 2d 1205 (Fla. 1997)  . . . . . . . . . . . . . . 16

Herrera v. State, 532 So. 2d 54 (Fla. 3d DCA 1988)  . . . . . 10

Hoffman v. State, 397 So. 2d 288 (Fla. 1981)  . . . . . . . 34

Huff v. State, 569 So. 2d 1247 (Fla. 1990)  . . . . . . . . 18

I.R. v. State, 385 So. 2d 686 (Fla. 3d DCA 1980)  . . . . . . 8

In the Interest of T.M.M., 560 So. 2d 805 (Fla. 4th DCA 1990)  7

Johnson v. State, 332 So. 2d 69 (Fla. 1976)  . . . . . . . 18

Jones v. State, 648 So. 2d 1210 (Fla. 4th DCA 1995)  ✓ . . (5) . 15

Jones v. State, 691 So. 2d 33 (Fla. 4th DCA 1997)  ✓ . . (6) . 8

Kinnon v. State, 439 So. 2d 958 (Fla. 3d DCA 1983), Review denied, 451 So. 2d 849 (Fla. 1984)  . . . . . . . . . . . . . . . . 20

LaPolla v. State, 504 So. 2d 1353 (Fla. 4th DCA 1987)  . . . . 9

Lawrence v. State, 614 So. 2d 1092 (Fla.), cert. denied, 114 S. Ct. 107, 126 L. Ed. 2d 73, 62 U.S.L.W. 3246 (U.S.Fla. Oct. 4, 1993) 18

Lynch v. State, 293 So. 2d 44 (Fla. 1974)  . . . . . . . . . 7

McCall v. State, 463 So. 2d 425 (Fla. 3d DCA 1985)  . . . . . 34

Middleton v. State, 426 So. 2d 548 (Fla. 1982)  . . . . . . 14

Munroe v. State, 514 So. 2d 397 (Fla. 1st DCA), review denied, 519 So. 2d 987 (Fla.1988)  . . . . . . . . . . . . . . . . . . 10

Noel v. State, 705 So. 2d 648 (Fla. 4th DCA 1998))  ✓ . . (7) 36

Peterka v. State, 640 So. 2d 59 (Fla. 1994)  . . . . . . . 16

Ray v. State, 403 So. 2d 956 (Fla. 1981)  . . . . . . . . 26

Salvatore v. State, 366 So. 2d 745 (Fla. 1979)  . . . . . . 17

Smith v. State, 568 So. 2d 967 (Fla. 1st DCA 1990)  . . . . . 14

Stark v. State, 316 So. 2d 586 (Fla. 4th DCA 1975), cert. denied,

State v. Duarte, 681 So. 2d 1187 (Fla. 2d DCA 1996)  . . . . 9

State v. Hamilton, 574 So. 2d 124 (Fla. 1991)(citing Perry v. State, 146 Fla. 187, 200 So. 525, 527 (1941)) . . . . . . . 18

State v. Hart, 632 So. 2d 143 (Fla. 4th DCA 1994) . . . . . . 8

State v. Law, 559 So. 2d 187 (Fla. 1989) . . . . . . . . . 7

Staten v. State, 519 So. 2d 622 (Fla. 1988)  . . . . . . . 8

Teffeteller v. State, 439 So. 2d 840 (Fla. 1983), cert. denied, 465 U.S. 1074 (1984) . . . . . . . . . . . . . . . . . . . 14

Thomas v. State, 512 So. 2d 1099 (Fla. 5th DCA 1987) . . . . 7

Thompson v. State, 648 So. 2d 692 (Fla. 1994)  . . . . . . 34

Tibbs v. State, 397 So. 2d 1120 (Fla. 1981), aff'd, 457 U.S. 31 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . 8

West v. State, 585 So. 2d 439 (Fla. 4th DCA 1991) . . . . . 8

Fisher v. State, 23 Fla. L. Weekly S351 (Fla. June 12, 1998) 12

Lewis v. State, 23 Fla. L. Weekly D1247 (Fla. 3d DCA May 20, 1998) . . . . . . . . . . . . . . . . . . . . . . . . . 33

Mason v. State, 23 Fla. L. Weekly D1540 (Fla. 4th DCA June 24, 1998) . . . . . . . . . . . . . . . . . . . . . . . . 33

Norton v. State, 1997 WL 792794 (Fla. 1997) . . . . . . . 34

Alcott v. State, 23 Fla. L. Weekly D1592 (Fla. 4th DCA July 1, 1998) . . . . . . . . . . . . . . . . . . . . . . . . 14

Cooper v. State, 23 Fla. L. Weekly D1518 (Fla. 3d DCA June 24, 1998) . . . . . . . . . . . . . . . . . . . . . . . 34

### MISCELLANEOUS

§ 777.011, Fla.Stat. (1993)  . . . . . . . . . . . . 9

§ 921.001(6), Fla. Stat. (1997) . . . . . . . . . . . 36

§ 921.0016(3)(I) . . . . . . . . . . . . . . . . . 35

§ 924.33, Fla. Stat. (1993) . . . . . . . . . . . . 34

PRELIMINARY STATEMENT

Appellant was the Defendant and Appellee was the prosecution in the Criminal Division of the Circuit Court of the 17th Judicial Circuit, in and for Broward County, Florida.  In this brief, the parties shall be referred to as they appear before this Honorable Court of Appeal except that Appellee may also be referred to as the State.

In this brief, the following symbols will be used:

"R" = Record on appeal;

"T" = Transcript of the trial.

All emphasis in this brief is supplied by Appellee unless otherwise indicated.

## STATEMENT OF THE CASE AND FACTS

Appellee accepts appellant's statement of the case and facts for purposes of this appeal subject to the additions and clarifications set forth below and in the argument portion of this brief which are necessary to resolve the legal issues presented upon appeal.

Appellant was convicted as charged of attempted first degree murder (R 3-4, 31). Appellant was adjudicated guilty (R 32), and was sentenced to thirty years incarceration with credit for time served (R 39-42). The trial judge departed from the sentencing guidelines, finding that the offense created substantial risk of death or great bodily harm to many persons or to one or more small children (R 39; T592).

### The Trial

Appellant and Christopher D'Ambrosio were friendly neighbors (T 245, 246). They met around March or April of 1996 (T 245). Appellant helped D'Ambrosio do things around the house and D'Ambrosio paid for them (T 248-249). In February of 1997, D'Ambrosio paid appellant to drive a truck with his belongings from Florida to Georgia (T 249-250). In Georgia, appellant was very helpful in unloading the truck, and D'Ambrosio paid appellant about $150-$160 for the job (T 253).

After unloading the truck in Georgia, appellant and D'Ambrosio drove to the airport, and were supposed to fly to Florida together, but they missed their flight (T 254, 257). They stopped at a gas

station, where D'Ambrosio filled gas (T 254). Suddenly, appellant left. D'Ambrosio tried, but could not find him (T 255).

D'Ambrosio flew back to Florida (T 257). Shortly later, D'Ambrosio received appellant's collect call from jail (T 257). Appellant told D'Ambrosio that there was bond that needed to be posted to help get him out of custody (T 258). D'Ambrosio made efforts to raise money for the bond, but ultimately was unsuccessful (T 259).

D'Ambrosio did not hear from appellant until April 13, 1997, at which time D'Ambrosio saw appellant near his house in Florida (T 259-260). Appellant was with another man, later known as co-defendant, Eddie Ruiz (T 261). Appellant approached D'Ambrosio and told him that he wanted to speak to him (T 260-264).

D'Ambrosio told appellant to meet him at the gas station (T 264). At the gas station, appellant blocked D'Ambrosio's car, exited Ruiz's car, and came to speak to D'Ambrosio (T 265). Appellant told D'Ambrosio that things got "hot" for him (T 265). D'Ambrosio felt bad for appellant and was prepared to give him money (T 265). Appellant blamed D'Ambrosio for leaving him in Georgia, and insinuated that D'Ambrosio owed him $150-$160 (T 266-267, 269). D'Ambrosio responded that he had paid appellant (T 268).

During a heated conversation between appellant and D'Ambrosio, Ruiz, who was sitting in the driver's seat, exited his car, walked toward appellant, and yelled out three times, "are we going to do

this or what?" (T 269-270, 271). Appellant got "very heated," and yelled at D'Ambrosio, "I want you to know that I'm going to kill you, do you understand me?" (T 271-272). After this threat, appellant followed D'Ambrosio and yelled, "you hear me, you hear me, I'm funckin' going to blow your fuckin' head off, you hear me" (T 271-272). D'Ambrosio started the car and left (T 272).

D'Ambrosio drove to Sheridan Street toward I-95, at which point he saw a white Honda Civic, which D'Ambrosio recognized as Ruiz's car coming behind him and driving in a reckless manner (T 273, 274, 276, 284). Ruiz pursued D'Ambrosio westbound on Sheridan Street. D'Ambrosio then got on I-95 heading northbound to avoid confrontation. Ruiz and appellant pursued D'Ambrosio on I-95. The road was busy with many cars (T 147, 273, 275). D'Ambrosio kept changing lanes in an attempt to get away and to avoid confrontation (T 274, 276). On three different times appellant and Ruiz's car became parallel with D'Ambrosio's car. On the third occasion, Ruiz's car came very close to D'Ambrosio's car, at which time D'Ambrosio heard a pop and felt a shot in the left side of his neck from a shotgun (T 275, 277, 278). D'Ambrosio rolled off to the side of the road and called 911 with the help of another motorist, Mr. Eiland (T 278). D'Ambrosio told the operator and Eiland that John Capelletti and Eddie shot him (T 149). _April 16, 1997_

Appellant was arrested on the afternoon of April 13, 1998, and D'Ambrosio's car was found in the area of eastbound of I-595 and I-95, with a hole in the driver's window (T 134, 154, 157, 283).

In D'Ambrosio's car at the location of the shot, the police found components of a gunshot shell, and plastic shot sleeves and cardboard component (T 164, 165, 167).

In the rear part of Ruiz's car, the police found a live shotgun shell, 2 cardboard wads, lead shot, and a plastic shot ring component (T 180-181, 185, 186).

Carl Haemmerle, a firearms examiner, examined a piece of tissue taken from D'Ambrosio's body during surgery, and found it to be lead shot (T 162, 405, 406). Haemmerle testified that the material found in D'Ambrosio's body was consistent with Winchester 7½ shot, and the components found in D'Ambrosio's car were also consistent with Winchester 7½ shot (T 409-411). According to Haemmerle, the components of the shell found in Ruiz's car were also consistent with the components of the shell found in D'Ambrosio's car, all of which were from the same manufacturer of shotgun shells (T 411-412).

Haemmerle also opined that the shot was made from a distance of approximately 6 to 12 feet (T 420). Haemmerle calculated the distance from which the shot was made, the type of the shotgun shell, and the components of the shell found in D'Ambrosio's car, and calculated that they were all consistent with each other (T 422).

The pellets from the shell penetrated D'Ambrosio's head and shoulder, and migrated to D'Ambrosio's heart and lungs, causing D'Ambrosio to have severe nerve damage (T 281-282).

The state also presented the testimony of Corporal Cruz, who stated that he arrested appellant in Atlanta on February 12, 1997, and that appellant appeared very upset (T 398).[1]  According to Cruz, appellant was cussing and talking about a third person, calling him "son of a bitch" for leaving him (T 398-399).

## SUMMARY OF THE ARGUMENT

1.  The trial court did not abuse its discretion in denying appellant's motion for judgment of acquittal.  The state presented competent substantial evidence from which the jury could infer that appellant was a principal to the crime of attempted first degree murder.

2.  The trial court did not abuse its discretion in denying appellant's motions for mistrial.  Although some of the witness's testimony was nonresponsive it did not prejudice appellant.  There is no reasonable possibility that it affected the outcome of this case.  The evidence against appellant was overwhelming, and none of appellant's theories of defense were reasonable.

3.  The trial court did not abuse its discretion in sentencing appellant to an upward departure sentence, because the reason given by the judge was supported by the evidence.  Shooting at the head of a driver who was the sole occupant of a moving car on a busy highway creates risks to many people.  The reason given by the

---

[1]This was the same evening appellant disappeared from the gas station after being with D'Amborsio, as testified by D'Ambrosio.

court was valid. Even if appellant did not hold the gun in his hands, he certainly was a participant in this crime, as the jury found him guilty of attempted first degree murder as a principal.

ARGUMENT

I.   THE   TRIAL   COURT   DID   NOT   ABUSE   ITS DISCRETION IN DENYING APPELLANT'S MOTION FOR A JUDGMENT   OF   ACQUITTAL   WHERE   THE   STATE PRESENTED  COMPETENT  SUBSTANTIAL  EVIDENCE  TO SUPPORT THE VERDICT OF ATTEMPTED FIRST DEGREE MURDER WHERE APPELLANT WAS A PRINCIPAL.

Appellant contends that the trial court abused its discretion in denying his motion for judgment of acquittal. Appellant asserts that his motion should have been granted because there was no evidence to place the gun in appellant's hands. Appellant claims that he was merely a passenger in the car driven by Ruiz. The state disagrees.

At trial defense counsel argued that there was no evidence to show that appellant actually did any act which went beyond thinking, and that there was no evidence that appellant actually pulled the trigger (T 440). The trial court denied the defendants' motions (T 448). This was not error.

The entry of judgment of acquittal is appropriate only in those rare instances in which no evidence exists to support entry of a conviction. In the Interest of T.M.M., 560 So. 2d 805 (Fla. 4th DCA 1990); Lynch v. State, 293 So. 2d 44, 45 (Fla. 1974). An appellate court may not retry a case or reweigh the evidence. Clark v. State, 379 So. 2d 97, 101 (Fla. 1979); State v. Law, 559 So. 2d

187, 188 (Fla. 1989); <u>Barwick v. State</u>, 660 So. 2d 685, 695 (Fla. 1995); <u>Thomas v. State</u>, 512 So. 2d 1099, 1101 (Fla. 5th DCA 1987)(circumstantial evidence which contradicts the defendant's theory of innocence should go the jury). The testimony of a single witness, even if uncorroborated and contradicted by other State witnesses, is sufficient to sustain a conviction. <u>I.R. v. State</u>, 385 So. 2d 686, 688 (Fla. 3d DCA 1980).

Further, the trial court did not abuse its discretion in denying appellant's motion for a new trial. <u>See</u> <u>State v. Hart</u>, 632 So. 2d 134 (Fla. 4th DCA 1994). "Sufficiency of evidence" is a test of whether the evidence presented is legally adequate to justify the verdict. <u>Tibbs v. State</u>, 397 So.2d 1120, 1123 (Fla. 1981), <u>aff'd</u>, 457 U.S. 31 (1982). As stated by this court:

> Where the only issue presented is the sufficiency of the evidence to sustain the verdict, and adequate evidence is presented to support the verdict, it is improper for the trial court to grant a new trial, even if there is conflicting evidence. [c.o.] In such a situation, it is the jury's function to evaluate the evidence. [c.o.]

<u>State v. Hart</u>, 632 So. 2d at 135, n. 2.

Moreover, in order to be convicted as a principal for a crime physically committed by another, one must intend that the crime be committed and do some act to assist the other person in actually committing the crime. <u>Staten v. State</u>, 519 So. 2d 622, 624 (Fla. 1988); <u>West v. State</u>, 585 So. 2d 439, 441 (Fla. 4th DCA 1991); <u>Jones v. State</u>, 691 So. 2d 33 (Fla. 4th DCA 1997); <u>A.B.G. v. State</u>,

586 So. 2d 445 (Fla. 1st DCA 1991)("[t]he elements of assistance of
the perpetrator and intent may be proven by a combination of
surrounding circumstances from which a jury can reasonably infer
defendant's guilt"), dismissed, 605 So. 2d 1261 (Fla. 1992); Busch
v. State, 466 So. 2d 1075, 1079 (Fla. 3d DCA 1984); § 777.011,
Fla.Stat. (1993). When the state relies on the aiding and abetting
theory, it can prove intent *either* by showing that the defendant
had requisite intent himself or that he knew the principal had that
intent. Stark v. State, 316 So. 2d 586, 587 (Fla. 4th DCA 1975),
cert. denied, 328 So. 2d 845 (Fla. 1976). However, it was noted in
Brewer v. State, 413 So. 2d 1217, 1219-20 (Fla. 5th DCA 1982), rev.
denied, 426 So. 2d 25 (Fla. 1983) that:

> Although the State must prove intent just
> as any other element of a crime... a
> defendant's mental intent is hardly ever
> subject to direct proof. Instead, the State
> must establish the defendant's intent (and
> jury must reasonably attribute such intent)
> based on the surrounding circumstances in the
> case. Keeping in mind the test to be applied
> to a motion for judgment of acquittal, a trial
> court should rarely, if ever, grant a motion
> for judgment of acquittal based on the State's
> failure to prove mental intent [c.o; f.n.o;
> e.s.].

In State v. Duarte, 681 So. 2d 1187, 1189 (Fla. 2d DCA 1996),
the second district rejected Duarte's claim of mere presence and
said the following:

> There is sufficient evidence for a jury
> to conclude that the appellee was a principal,
> and the evidence is inconsistent in every
> instance with his reasonable hypothesis of

innocence as merely a noninvolved Spanish-speaking aider and abettor. See LaPolla v. State, 504 So.2d 1353 (Fla. 4th DCA 1987). The jury may infer from all the circumstances surrounding and accompanying the act that the common purpose to commit the crime existed. Herrera v. State, 532 So.2d 54 (Fla. 3d DCA 1988). An individual's activities can overcome the absence of utterances. Munroe v. State, 514 So.2d 397 (Fla. 1st DCA), review denied, 519 So.2d 987 (Fla.1988). The evidence of the appellee's presence at the transaction and his involvement in every aspect of the agreement clearly went beyond a showing of aiding and abetting. See Ford v. State, 592 So.2d 348 (Fla. 2d DCA 1992). We, therefore, affirm the lower court's denial of the appellee's motion for judgment of acquittal.

Here, the state presented competent substantial evidence to support appellant's conviction for attempted first degree premeditated murder.

The state had to prove the following elements for attempted first degree premeditated murder:

number one, the defendant did some act intended to cause the death of Christopher D'Ambrosio that went beyond just thinking or talking about it.

Number two, the defendant acted with a premeditated design to kill Christopher D'Ambrosio except that someone prevented the defendant from killing Mr. D'Ambrosio, or he failed to do so.

A premeditated design to kill means that there was a conscious decision to kill. The decision must be present in the mind at the time the act was committed. The law does not fix the exact period of time that must pass between the formation of the premeditated intent to kill and the act. A period of time must be long enough to allow reflection by the defendant. The premeditated intent to kill must be formed before the act was committed.

> The question of premeditation is a
> question of fact to be determined by you from
> the evidence. It will be sufficient proof of
> premeditation if the circumstances of the
> attempted killing and the conduct of the
> accused convince you beyond a reasonable doubt
> of the existence of premeditation at the time
> of the attempted killing.
>
>                    ***
>
> If you find only that Mr. Capelletti
> committed attempted first degree murder but
> did not possess a firearm, then you should
> find Mr. Capelletti guilty of attempted first
> degree murder.

(T 544-545). The judge also charged the jury with "independent

act" as follows:

> If you find the crime alleged was
> committed, an issue in this case is whether
> the crime of attempted first degree murder was
> an independent act of a person other than the
> defendant. An independent act occurs when a
> person, other than the defendant, commits or
> attempts to commit a crime: number one, which
> the defendant did not intend to occur. And
> number two, in which the defendant did not
> participate.
> And number three, which was outside of
> and not reasonably foreseeable consequence of
> the common design or unlawful act contemplated
> by the defendant.
>                    ***

(T 547-548).

In the instant case, the state presented testimony, which

indicated that throughout the entire incident appellant and his co-

defendant, Mr. Ruiz, acted in concert. The totality of the

circumstances establishes that appellant was a principal.

Appellant intended to kill Christopher D'Ambrosio and said so.

Further, appellant said words which were intended to and which caused and encouraged Mr. Ruiz to commit the offense. Thus, even if it was Mr. Ruiz and not appellant who actually held the shotgun, appellant must be treated as if he had done all the things Ruiz did. See Fisher v. State, 23 Fla. L. Weekly S351 (Fla. June 12, 1998)("We reject Fisher's contention that he was merely a bystander because it could not be proven that he wielded one of the three guns used in the shooting. The circumstances leading up to this event, as well as hie effort to concoct a false alibi, provide more than enough evidence to convict him as a principal in the crime").

The record shows that on February 12 1997, appellant was very upset at D'Ambrosio for several reasons: first, appellant believed that D'Ambrosio left him in Georgia; next, appellant believed that D'Ambrosio owed him money; and finally, appellant believed that D'Ambrosio could have helped him bond out of jail but chose not to do so (T 398-399).

D'Ambrosio did not hear from appellant until April 13, 1997, at which time appellant came with Ruiz to speak to D'Ambrosio and to collect his alleged owed money (T 259-266). Appellant came to look for D'Ambrosio with his friend, Ruiz, in Ruiz's car. Ruiz drove his car, while appellant was a passenger (T 259-270). When D'Ambrosio saw appellant and Ruiz, D'Ambrosio asked appellant to follow him to the gas station. Ruiz drove appellant to the gas station where they met D'Ambrosio (T 254).

At the gas station, appellant got out of the car and came to

talk to D'Ambrosio.  In a heated argument appellant told D'Ambrosio he was upset at him for owing him money and for leaving him in Georgia.  D'Ambrosio denied owing appellant money, at which point appellant got even more upset (T 266-269).

In the midst of a heated argument, Ruiz got out of his car and yelled out three times, "are we going to do this or what?"  (T 265, 269-271).  While D'Ambrosio was filling gas and in the presence of Ruiz, appellant yelled at D'Ambrosio in a threatening voice, "I want you to know that I'm going to kill you, do you understand me?" (T 271-272).  Then, appellant followed D'Ambrosio and yelled, "you hear me, you hear me, I'm funckin' going to blow your fuckin' head off, you hear me" (T 271-272).  D'Ambrosio started the car and left (T 272).

On the highway D'Ambrosio saw Ruiz's white Honda driving in a reckless manner, weaving in and out of traffic (T 273-276). Knowing that appellant and Ruiz were after him, D'Ambrosio tried to avoid confrontation with them by changing lanes (T 274).  With Ruiz's car, Ruiz and appellant managed to become parallel with D'Ambrosio's car three times (T 275).  On the third occasion, after 4½ miles of chase, D'Ambrosio felt a shot in his neck.  After the shooting Ruiz and appellant fled the scene (T 277, 278).

The record shows that Ruiz and appellant acted in concert, and each knew and intended for the shooting to happen.  Ruiz's statement "are we going to do it or what?" indicates that they planned the shooting.  Appellant threatened in an unambiguous

manner to kill D'Ambrosio.   Appellant also fled with Ruiz the
scene.   Ruiz and appellant had to work in concert in order to get
the job done.   The record shows that they each knew about the
shooting, and intended for it to happen.

## Premeditation

It is appropriate to prove premeditation by circumstantial
evidence. See Teffeteller v. State, 439 So. 2d 840 (Fla.  1983),
cert. denied, 465 U.S. 1074 (1984); Alcott v. State, 23 Fla. L.
Weekly D1592 (Fla.  4th DCA July 1, 1998); Brewer v. State, 413
So. 2d 1217, 1219-20 (Fla. 5th DCA 1982)(a trial court should
rarely, if ever, grant a motion for judgment of acquittal based on
the State's failure to prove mental intent), rev. denied, 426 So.
2d 25 (Fla. 1983).   Premeditation may be inferred from the nature
of the weapon, the presence or absence of provocation, previous
difficulties between the parties, the manner in which the homicide
is committed, the nature and manner of the wound, and the actions
of the accused before and after the homicide. Smith v. State,  568
So. 2d 965 (Fla. 1st DCA 1990). Even if the time for reflection
was short, premeditation could be inferred.  Middleton v.  State,
426 So. 2d 548, 549 (Fla. 1982).

Here, the evidence at trial shows that appellant threatened to
kill D'Ambrosio.   Appellant and Ruiz planned the shooting.   Ruiz
asked appellant during his heated argument with D'Ambrosio, "are we
going to do it or what?"  (T 269-272).  Appellant and Ruiz followed
D'Ambrosio in their car in a reckless manner (T 273-274).  Ruiz and

appellant waited for an opportunity to get close to D'Ambrosio's car (T 275). Appellant and Ruiz followed D'Ambrosio for 4½ miles on the highway before shooting, during which they had time to reflect. Appellant and Ruiz used a powerful shotgun. There is no evidence of provocation. Appellant or Ruiz aimed at D'Ambrosio's head, and shot from a close range. D'Ambrosio's injuries were serious (T 281). After the shooting, Ruiz and appellant fled the scene.

The live shell found in Ruiz's car matched the material found in D'Ambrosio's body, and the shell found in D'Ambrosio's car was of the same component as that found in Ruiz's car and that found in D'Ambrosio's body. The record, then, shows that the actions of Ruiz and appellant were planned, and premeditated.

The state clearly presented testimony that shows that appellant was an active participant in an attempt to kill D'Ambrosio. See C.N.W. v. State, 670 So. 2d 1052 (Fla. 2d DCA 1996)(record supports the trial court's finding that the defendant was aider and abettor in the burglary based on her admitted presence with the group and the neighbor's testimony that the group primarily went from car to car as a group); Jones v. State, 648 So. 2d 1210 (Fla. 4th DCA 1995)(to be found guilty as principal it is not necessary for aider and abettor to know of every detail of the crime, so long as there exists evidence of aider's intent to participate).

Appellant knew about the plan to kill D'Ambrosio, as Ruiz

reminded him about their plan at the gas station. In fact, the record shows that it was *appellant* who was upset at D'Ambrosio. This evidence is inconsistent with any reasonable hypothesis of innocence and lack of knowledge or intent. See Henderson v. State, 679 So. 2d 805 (Fla. 3d DCA 1996)(no error in denying defendant's motion for judgment of acquittal based on defendant's claim that he was unknowingly the driver of getaway car; evidence presented gave rise to inference that vehicle occupied by defendant and his two passengers arrived at robbery scene almost simultaneously with victims, that defendant was following victims, that defendant deliberately let his passengers exit at end of victim's driveway, and that vehicle driven by defendant was waiting with engine running when two passengers, having robbed the victims, ran to vehicle and got in; evidence sufficient to refute defendant's contention that he was merely taking two passengers to station and lacks knowledge or intent to rob victims), affirmed 698 So. 2d 1205 (Fla. 1997).

It was up to the fact finder to determine whether under the evidence presented at trial, the hypothesis of innocence advanced by appellant (that he was merely a bystander who did not know what was going to happen, and that he just took a ride with Ruiz who actually pulled the trigger unbeknown to appellant), was reasonable or far fetched. Appellant's conduct was inconsistent with his contention of innocence. Appellant did not call the police after

the shooting, did not call an ambulance, did not rush to help D'Ambrosio after the shooting, and did not withdraw at any point. See Peterka v. State, 640 So. 2d 59, 68 (Fla. 1994)("the circumstantial evidence standard does not require the jury to believe the defense version of the facts"); Bedford v. State, 589 So. 2d 245 (Fla. 1991), cert. denied, 503 U.S. 1009 (1992)(the jury free to reject defendant's version of events as unreasonable); Finney v. State, 660 So. 2d 674, 680 (Fla. 1995). Thus, appellant has failed to present any reasonable theory that would have tended to exculpate him. Appellant's conviction must be affirmed.

> II. THE TRIAL COURT DID NOT ABUSE ITS DISCRETION IN DENYING APPELLANT'S MOTIONS FOR MISTRIAL WHERE THE STATE WITNESS WAS NON-RESPONSIVE.

Appellant contends that the trial court abused its discretion in denying his motions for mistrial, when during trial D'Ambrosio gave some non-responsive answers. The state disagrees.

The law of our State is well settled that a motion for mistrial is addressed to the sound discretion of the trial judge. Salvatore v. State, 366 So. 2d 745 (Fla. 1979); Buenoano v. State, 527 So. 2d 194 (Fla. 1986); Gorby v. State, 630 So. 2d 544 (Fla. 1993), cert. denied, 115 S. Ct. 99, 63 U.S.L.W. 3259 (U.S. Fla. Oct. 3, 1994) (No. 93-8770); Breedlove v. State, 413 So. 2d 1, 7 (Fla.), cert. denied, 459 U.S. 882, 103 S. Ct. 184, 74 L. Ed. 2d 149 (1982). The power to declare a mistrial and discharge the jury should be exercised with great caution and should only be done in

cases of absolute necessity. <u>Salvatore</u>, 366 So. 2d at 750. A mistrial is a device used to halt the proceeding when an error is *so prejudicial and fundamental* that the expenditure of further time and expense would be wasteful if not futile, because the error vitiated the trial. <u>Johnson v. State</u>, 332 So. 2d 69 (Fla. 1976); <u>Ferguson v. State</u>, 417 So. 2d 639 (Fla. 1982); <u>Duest v. State</u>, 462 So. 2d 446 (Fla. 1985); <u>United States v. Acevedo</u>, 141 F. 3d 1421 (11th Cir. 1998)(a mistrial is only warranted if there is a reasonable possibility that the alleged error prejudiced the defendant by affecting the jury's final verdict).

A mistrial is properly denied *where the allegedly prejudicial* remark can be cured by an appropriate instruction to the jury. <u>Lawrence v. State</u>, 614 So. 2d 1092 (Fla.), <u>cert. denied</u>, 114 S. Ct. 107, 126 L. Ed. 2d 73, 62 U.S.L.W. 3246 (U.S.Fla. Oct. 4, 1993) (No. 92-8730) (testimony that same type weapon used in crime reported missing from defendant's girlfriend's house, after his visit, was harmless error in light of curative instruction); <u>Harmon v. State</u>, 527 So. 2d 182 (Fla. 1988) (error in witness' testimony that he met defendant in jail was alleviated by curative instruction); <u>State v. Hamilton</u>, 574 So. 2d 124, 126 (Fla. 1991) (when an alleged error is committed which does no substantial harm and the defendant is not materially prejudiced by the occurrence, the court should deny the motion for a mistrial)(citing <u>Perry v. State</u>, 146 Fla. 187, 200 So. 525, 527 (1941)).

Further, discretion is abused only where no reasonable man could take the view adopted by the trial court. <u>Booker v. State</u>, 514 So. 2d 1079, 1085 (Fla. 1987); <u>Huff v. State</u>, 569 So. 2d 1247, 1249 (Fla. 1990); <u>Canakaris v. Canakaris</u>, 382 So. 2d 1197, 1203 (Fla. 1980)(discretion is abused when the judicial action is arbitrary, fanciful, or unreasonable, but <u>if</u> <u>reasonable men</u> <u>could</u> <u>differ</u> as to the propriety of the action taken by the trial court, then <u>no</u> <u>abuse</u> of discretion occurred).

No abuse of discretion occurred here. Admittedly, D'Ambrosio was at certain points during the trial non-responsive to counsel's questions. However, the trial court correctly stated the following in denying the motion for a mistrial:

> The court finds that the cumulative affect of Mr. D'Ambrosio's conduct would not rise to the level of depriving either defendant the right to a fair trial.
> The court did give several jury instructions for the jury to disregard improper remarks made by Mr. D'Ambrosio, including the remarks we have regarding Mr. Nichols...

(T 440).

<u>D'Ambrosio's Non-responsive Answers to Counsel</u>

Appellant claims that the following non-responsive comments made by D'Ambrosio were offensive, and required a new trial.

The record shows that D'Ambrosio responded the following to a question asked by the prosecutor:

> Q. So there were times that he would do things or help you out around the house you would pay X amount of dollars to have him help

> you out?
>
> A.  Yes.  In all fairness, it wasn't a lot of
> help but he could smoke cigarettes and drink
> beer.  He's good entertainment.

(T 249).  Defense counsel objected, but no motion for a mistrial was made.  The trial judge sustained appellant's objection and gave a curative instruction (T 249).  After the instruction was given D'Ambrosio stated that he did not intend his comments to be derogatory (T 249).

Appellee contends that even if D'Ambrosio's comment was non-responsive, appellant was not prejudiced by this innocuous comment.  Cf. Kinnon v. State, 439 So. 2d 958, 960 (Fla. 3d DCA 1983)("...we refuse to indulge the anyway dubious presumption that the jurors inevitably drew the *wrong* conclusion from apparently innocuous statements in which only lawyers and judges sensitized to possible error could even detect a sinister implication"[emphasis in original]), Review denied, 451 So. 2d 849 (Fla. 1984).

Next, in response to the prosecutor's questions, D'Ambrosio responded as follows:

> Q.  What happened in the gas station?
>
> A.  John's [sic] a little lit before he gets
> to the gas station.  When I say lit, I mean --
> -

(T 254).  Defense counsel objected, but no motion for a mistrial was made (T 254).  The trial judge sustained appellant's objection, and instructed the witness to couch his response to the questions

(T 254).  Although defense counsel argued that the testimony was irrelevant it is not clear if it was or was not, because the witness was not allowed to complete the sentence.  It is ambiguous as to what D'Ambrosio meant by saying that appellant was "lit" before they got to the gas station (T 254).  Although the testimony is perhaps irrelevant, appellant was not prejudiced from this comment.  The record shows that the jury had heard that appellant was upset at D'Ambrosio, and that their argument was "heated."

Next, in response the prosecutor's question D'Ambrosio responded as follows:

> Q.  And at some point, did you learn how much that bond was?
>
> A.  It varied.  According to John it varied, but it dependent on --

(T 258).  Appellant's objection was sustained and the judge instructed the witness to be responsive to the question.  No motion for a mistrial was made.  Again, although the witness was not responsive, nothing prejudicial was said.  The jury never heard why it varied, nor did it hear what it meant.  The response to the prosecutor's question, "it varied," was admittedly non-responsive, but totally meaningless, and certainly not prejudicial.

Next, in response to the prosecutor's question, D'Ambrosio said the following:

> Q.  What is the next thing that happens?
>
> A.  ... He was basically trying to blame me, but he was walking a line.  It was weird to understand what he was trying to say.  I was

> really hoping he would say, you know, can I
> borrow $20's, you know, for his umpteen time
> and I would give it to him.

(T 266). The trial judge sustained appellant's objection and
instructed the jury to disregard the last comment. Again defense
counsel did not move for a mistrial, apparently because appellant
was not prejudiced by this comment. It was clear that D'Ambrosio
was testifying as to his own thoughts, and that his testimony had
nothing to do with appellant's actions. All the jury heard was
that appellant used to borrow money from D'Ambrosio. Although it
was not responsive, there was nothing prejudicial about the
comment. D'Ambrosio did not volunteer any testimony that appellant
ever failed to pay back loans. All the jury heard was that
appellant used to borrow money. This was not prejudicial.

It was clear to the jury that appellant and D'Ambrosio were no
longer friends at that point, and that there was bad feelings
between them. Thus, the jury understood that some of these
comments were made because of this deterioration in the
relationship between appellant and D'Ambrosio.

Next, in response to the prosecutor's question D'Ambrosio said
the following:

> Q. Okay. What was he saying to you?
>
> A. He said words to the affect that after he
> went on dissertation of the story, he said
> basically -- excuse me, not basically, he said
> the words well, as far as I see it, he got
> hundred -- it was 150 or $160 coming to him.
> He was, in so many words, saying that he had
> gotten arrested at this gas station and when

```
he --
      ***
A.  And he never said no, you didn't pay me,
but he woke up and became conscious and he was
in jail.
```

(T 266-268).  Appellant objected "to this characterization" and the

trial judge sustained the objection (T 267).  Appellant's request

for a mistrial was denied (T 268).  The trial court reminded

counsel to ask his questions in such a way that it would limit the

witness's freedom to embellish, and allowed the prosecutor to lead

the witness (T 269).

Appellee contends that D'Ambrosio's response did not create a

reversible error such as to vitiate the entire trial.  In <u>Erickson</u>

<u>v. State</u>, 565 So. 2d 328, 334 (Fla. 4th DCA 1990), this Court has

stated that "even incorrectly admitted evidence is deemed harmless

and may not be grounds for reversal when it is essentially the same

as or merely corroborative of other properly considered testimony

at trial."

Here, D'Ambrosio had testified that appellant was in jail and

needed help in bailing him out.  The jury at that point had already

heard about his previous arrest.  Further, it is unlikely, and also

speculative to assume that the jury drew the wrong conclusion from

the unsolicited testimony regarding "becoming conscious."

Next, in response to the following question, the witness

responded as follows:

Q.  Mr. Ruiz's vehicle was jerky?

A. Yes.

Q. Is he passing up cars to catch up your vehicle?

A. He's doing somersaults.

(T 276). The trial judge overruled appellant's objection to the characterization of the word "somersault." There was nothing prejudicial about the witness describing that the car in which appellant was a passenger, and which chased D'Ambrosio was driving in a reckless manner. There is also nothing about the word "somersault" that is so prejudicial to warrant a mistrial.

During the cross-examination of co-defendant's counsel, D'Ambrosio responded the following to counsel's question:

> Q. And you said that he made some statements, are we going to do this, you know, come on, what are we going to do, right?
>
> A. What's with this. Are we doing this or what that's right. What are we doing here. Are we doing this or, that's right.
>
> Not once, but at least -- at least two times, I believe it was more like three, yes, he wanted to know if they were going to go on with whatever it is they already planned to do. Okay. Terry Nichols wasn't even in Oklahoma --

(T 317-318). Counsel's motion to strike was granted and the judge instructed the jury to disregard the last response, but denied the motion for a mistrial, and cross-examination resumed (T 318). When read in context, it can hardly be said that the comment "Terry Nichols wasn't even in Oklahoma -- " was so prejudicial as to cause a mistrial, especially where the judge gave an immediate curative

instruction. Further, although appellant argues that he was analogized to Nichols, the mention of Terry Nichols is too ambiguous to conclude that the jury perceived it that way. Also, the unsolicited comment was not made the feature of the trial and was isolated in nature, especially here where D'Ambrosio's testimony was lengthy.

In response to defense counsel's question, D'Ambrosio responded the following:

> Q. But you never really liked John Capelletti, is that right?
>
> A. No, I liked John Capelletti. I liked John Capelletti. Great guy to play with, but dangerous.

(T 350). In response to appellant's objection, the trial judge asked the jury to step to the jury room and again warned the witness that he would grant a mistrial if the witness did not stop to put his "own extra spin" on his answers (T 351). D'Ambrosio's volunteered testimony that appellant was "a great guy" but "dangerous" was admittedly non-responsive and improper. However, appellee contends that even if error it did not warrant a new trial.

Thus, none of the above comments individually, or collectively constitute reversible error. The trial judge did not abuse its discretion in denying a mistrial.

### The Alleged Attack on Counsel's Function

### Cross-examination by Co-defendant's Counsel

Appellant also contends that D'Ambrosio's remarks disparaged defense counsel's function in the following instances.

D'Ambrosio testified that he did not know Ruiz (T 297). Then in response to a question asked by co-defendant's counsel of whether D'Ambrosio referred to co-defendant as a monkey, D'Ambrosio responded:

> It was an inappropriate and derogatory. As is was inappropriate of suggesting that somehow I don't know someone, yet I dislike them.... I was really initially trying to tell people what happened and then they play an attorney game with you where they start flipping and dig and you know changing and putting words in your mouth.

(T 297-298). D'Ambrosio stated that counsel "put words in his mouth." There was no objection to this alleged comment. Had appellant's counsel felt that the improper comment to co-defendant's counsel prejudiced appellant in any way appellant's counsel would have objected. But apparently he did not. See Ray v. State, 403 So.2d 956 (Fla. 1981)("The failure to object is a strong indication that, at the time and under the circumstances, the defendant did not regard the alleged fundamental error as harmful or prejudicial"). There is nothing prejudicial to appellant about this comment to co-defendant's counsel, and certainly it is not fundamental error.

The next alleged improper comment was as follows:

> Q. Now, Mr. D'Ambrosio, the only person, again that you were involved regarding this Georgia incident was Mr. Capelletti....

    A.  Georgia wasn't an incident for me.  It was
an incident for me.

(T 298-299).  Again, no objection to this alleged improper comment

was made.  Appellee contends that nothing improper or prejudicial

occurred here either, because D'Ambrosio's response was totally

meaningless and did not add anything to the trial.

    During cross-examination, defense counsel attempted to impeach

D'Ambrosio and asked him to refer to the transcript of the

deposition.  D'Ambrosio responded: "If you give it to the jury they

can read it too rather than put a spin it on" (T 306).  At that

point, the court reminded D'Ambrosio to listen to the question and

respond to it (T 305-309).  No objection to this alleged improper

comment was made.  Although not responsive, no prejudice occurred

here either.  Perhaps D'Ambrosio's response could be viewed as

disrespectful to the court and to the judicial system.  But, no

prejudicial error occurred. On the contrary, D'Ambrosio's attitude

only might have led the jury to take D'Ambrosio less seriously, and

add to the reasonable doubt, which was appellant's strongest theory

of defense.

    Then, again when D'Ambrosio answered non-responsively, the

court instructed the jury to disregard that portion of the answer

in which D'Ambrosio stated that counsel was trying to "put a spin"

on his answers (T 310-311, 315-316).

    It was clear that counsel tried to impeach D'Ambrosio.  Thus,

it was not improper for D'Ambrosio to tell counsel that he took

things out of context.  This comment **to co-defendant's counsel** did

not prejudice **appellant**.

Appellant alleges that D'Ambrosio made the following improper

comments:

> Gees, I would have sworn I said that a few
> times here, didn't I ask you a few times?

And

> If you're telling me I said something that I
> didn't say, of course I want to see it.

And

> Did you catch that!  What a razzle-dazzle that
> was.  What's that?  If it ain't here, it ain't
> here.  You got that?  Okay.  If it ain't here,
> it ain't here.  What was that.

(T 322-323).  Although defense counsel did not object to any of

these comments, the court reminded D'Ambrosio of the court's rules

and ordered him to follow them (T 322-323).  There was nothing

prejudicial by any of these comments.  D'Ambrosio's comments were

in response to co-defendant's counsel attempts to impeach him.

In response to defense counsel's question of whether

D'Ambrosio was placed on probation, D'Ambrosio stated that "I think

we've gone over that, yes."  (T 329-330).  Again the court ordered

D'Ambrosio to "just answer the question" (T 330), and again, no

objection was made.  Nothing about any of these unobjected comments

prejudiced appellant.  Although admittedly, these comments do not

constitute conventional court language, there was nothing about

them that could constitute fundamental or reversible error.

When asked about another case, in which D'Ambrosio was placed

on probation, D'Ambrosio stated that he would rather not talk about

it and that if counsel was in his shoes counsel would also not want to talk about it (T 333-334).

Although there was no objection, the judge excused the jury, reprimanded D'Ambrosio, and told D'Ambrosio that he did not want to see a mistrial at that stage but would grant it if it was necessary (T 335-336). At that point defense counsel renewed her motion for a mistrial, which was denied (T 337).

In response to counsel's attempt to impeach D'Ambrosio, D'Ambrosio stated, "I didn't make a motion. If my attorney made a motion -- I didn't -- Christopher D'Ambrosio did not make a motion. I am sorry, but you -- you walked right into it" (T 343). Appellant's objection was sustained but no motion for a mistrial was made (T 343). Again, there was nothing about this comment to constitute reversible error. Perhaps D'Ambrosio's response could be considered disrespectful manner of speaking. But it certainly did not hurt appellant in any way.

### Cross-examination by Defense Counsel

Defense counsel tried to impeach D'Ambrosio with his deposition testimony by asking him if he remembered calling appellant a "low life" (T 346). After reading through his deposition transcript, D'Ambrosio said, "you take it out of context, give it to the jury" (T 348). Although there was no objection, the court sua sponte reminded D'Ambrosio to respond to the question (T 348). Nothing about this comment was prejudicial to appellant. As D'Ambrosio did before, he told defense counsel

that the way the question was asked, it was taken out of context. This was not an improper response.

After reading part of the deposition transcript, D'Ambrosio stated "action speak louder than words" (T 350). The trial judge sua sponte reminded D'Ambrosio to answer with the word "yes" only and sustained appellant's objection (T 350).

Again there was nothing about this comment to constitute prejudicial error. It could be arguably be considered non-responsive. But it cannot be considered a reversible error.

During defense counsel's attempt to impeach D'Ambrosio with his deposition, D'Ambrosio stated that counsel takes the lines out of context (T 364-365). The court sustained the objection, denied a mistrial, and allowed defense counsel to repeat the question (T 365-366). Then, when D'Ambrosio was instructed to look at the transcript of his deposition, he said, "Line 11 -- It's not a whole sentence, but O'kay. If you want to isolate it" (T 370-371). At that the trial judge sustained appellant's objection, instructed D'Ambrosio to answer the question without commenting on the question, but denied a side bar (T 371). Other than not being responsive, nothing prejudicial occurred at that point. D'Ambrosio had the right to comment on the improper impeachment.

At one point during the cross-examination counsel asked D'Ambrosio if he knew what appellant's feelings were toward him (D'Ambrosio) (T 374-375). D'Ambrosio responded that he could not tell counsel about appellant's feelings. Then when counsel asked,

"Have you ever give --," D'Ambrosio stated, "Some cases -- wait a minute, you asked me about words. Then when I go into a little bit more than words, you can't have it both ways" (T 375). Counsel's objection was sustained and the court ordered D'Ambrosio to refrain from commenting on the question (T 375). Here, D'Ambrosio commented on the manner in which counsel impeached him. There is nothing about this comment that prejudiced appellant.

During defense counsel's attempt to clarify D'Ambrosio's testimony during deposition, counsel asked whether D'Ambrosio could "eat appellant off the road," D'Ambrosio responded that he does not eat cars. The court sustained the objection to this comment, and reminded D'Ambrosio to refrain from adding extraneous comments (T 391).

D'Ambrosio most likely meant to testify that appellant was very close to D'Ambrosio's car when he was chasing D'Ambrosio in Ruiz's car. Although this comment and use of metaphors is not a conventional talking by some people, there was nothing prejudicial about this comment either.

Admittedly, D'Ambrosio was not responsive. However, the comments volunteered by D'Ambrosio do not prejudice appellant at all. Even when taken collectively, they did not constitute reversible error that warranted the granting of a mistrial. On the contrary, if any thing D'Ambrosio's demeanor at court could have caused the jury to take him less seriously. Thus, no error occurred.

## Harmless Error

However, even if error, it was harmless beyond a reasonable doubt and there is no reasonable possibility that it affected the outcome of this case. Appellant has not demonstrated that his trial contained prejudicial error, as required by § 924.051(7), Fla. Stat. (Supp. 1996). Goodwin v. State, 23 Florida Law Weekly D918 (Fla. 4th DCA April 8, 1998), rehearing denied, 23 Florida Law Weekly D1538 (Fla. 4th DCA June 24, 1998); § 924.051(7), Florida Statutes (Supp. 1996)("the party challenging the judgment ... has the burden of demonstrating that a prejudicial error occurred..."). See also Howard v. State, 471 So. 2d 208 (Fla. 5th DCA 1985)(an improper comment by a state witness concerning alleged other bad conduct on the part of defendant although ordered by the trial judge not to do so was harmless); Webber v. State, 23 Florida Law Weekly D__, Case No. 97-115 (Fla. 5th DCA August 28, 1998)(state witness testified regarding collateral crimes was improper but harmless).

The alleged error did not affect the outcome of the case. The jury heard testimony from which it could conclude that appellant was a principal who acted in concert with Ruiz to shoot D'Ambrosio on April 13, 1997. The state presented evidence that appellant and his co-defendant had premeditated intent to shoot and kill D'Ambrosio. Appellant demanded money he claimed D'Ambrosio owed him. When D'Ambrosio denied it, appellant got angry and threatened to kill D'Ambrosio. During appellant's threats, Ruiz reminded

appellant of their plans.

Immediately following the threats, appellant chased D'Ambrosio on the highway in Ruiz's car for 4½ miles, while appellant's co-defendant drove in a reckless manner. At the third attempt to come close to D'Ambrosio's car, D'Ambrosio got shot in the base of is head, causing him serious injuries. After the shot appellant and his co-defendant fled the scene.

Further, the jury also heard that a live shell was found in Ruiz's car, which matched the material components of a shell found in D'Ambrosio's body, and the material components of the shell found in D'Ambrosio's car.

Moments after D'Ambrosio got shot, he told the 911 operator and another motorist that John Capelletti and Eddie shot him.

The circumstantial evidence of attempted first degree murder was overwhelming and undisputed. Thus, even if error, there is no reasonable possibility that it affected the outcome of the case. See generally Mason v. State, 23 Fla. L. Weekly D1540 (Fla. 4th DCA June 24, 1998).

None of appellant's theories of defense were logical. Appellant's claim that he was merely a bystander and a passenger in Ruiz's car, was refuted by the evidence.

Next, appellant's theory that he did not pull the trigger is without merit, because the state tried the case under the principal theory. Thus, it did not matter who actually pulled the trigger.

Finally, appellant's theory of independent act is also without

merit. Appellant did not present any evidence that would tend to exculpate him or that shows that Ruiz acted by himself, that there was any independent act, and that appellant did not have intent to participate. In fact, the judge instructed the jury that appellant does not even have to be present when the crime is committed or attempted (T 547). Appellant's theory that some unidentified person must have shot D'Ambrosio also does not have any merit and obviously was not believable by the jury. There was nothing in the record to support such a theory of defense.

The alleged error of non-responsive testimony by D'Ambrosio does not merit a reversal of appellant's conviction. Cf. Lewis v. State, 711 So. 2d 205 (Fla. 3d DCA 1998)(*repeated* misconduct of prosecutor throughout the entire trial by bolstering the testimony of the victim and *repeated* attacking of defense counsel was harmless); Briggs v. State, 455 So. 2d 519, 520 (Fla. 1st DCA 1984); Thompson v. State, 648 So. 2d 692, 695 (Fla. 1994)(non-responsive testimony by a witness harmless); McCall v. State, 463 So. 2d 425 (Fla. 3d DCA 1985)(unsolicited comment by a state witness was harmless); Norton v. State, 709 So. 2d 87 (Fla. 1997)(unsolicited comment was invited by defense counsel). Cf. Cooper v. State, 712 So. 2d 1216 (Fla. 3d DCA 1998)(suggestion that defendant suborned perjury or otherwise introduced manufactured testimony by defense witnesses is improper where there is no foundation in the record; however, comments are not so inflammatory

or egregious as to deprive defendant of fair trial, where the evidence of guilt is overwhelming).

Further, "the modern trend in criminal cases 'is to excuse technical defects which have no bearing upon the substantial rights of the parties. When procedural irregularities occur, the emphasis is on determining whether anyone was prejudiced by the departure. A defendant is entitled to a fair trial, not a perfect trial.'" Hoffman v. State, 397 So.2d 288, 290 (Fla. 1981) (emphasis added) (quoting Lackos v. State, 339 So.2d 217, 219 (Fla. 1976)).

Section 924.33, Fla. Stat. (1993), provides that

> [n]o judgment shall be reversed unless the appellate court is of the opinion, after an examination of all the appeal papers, that error was committed that injuriously affected the substantial rights of the appellant. It shall not be presumed that error injuriously affected the substantial rights of the appellant. [e.s.]

Additionally, the trial judge reprimanded D'Ambrosio numerous times in front of the jury. Thus, the jury knew that the court considered D'Ambrosio's non-responsive answers inappropriate. Thus, it was clear to the jury that these non-responsive comments were unacceptable and should be disregarded.

> III. THE TRIAL COURT DID NOT ABUSE ITS DISCRETION IN SENTENCING APPELLANT BECAUSE THE REASON FOR THE UPWARD DEPARTURE SENTENCE IS SUPPORTED BY THE RECORD.

Appellant contends that there was no valid reason for the trial court to depart from the sentencing guidelines. The state disagrees.

Section 921.001(6), Florida Statutes (1997), provides that the trial judge may impose a departure sentence outside the sentencing guidelines based upon circumstances which reasonably justify aggravation. The level of proof necessary to establish facts supporting a departure is a preponderance of the evidence. Id. Section 921.0016(3)(I), Florida Statutes (1997), provides that a sentencing judge may depart from the sentencing guidelines if the "offense created a substantial risk of death or great bodily harm to many persons or to one or more small children."

Here, the evidence established that appellant acted in concert with his co-defendant, Ruiz. Appellant sat as a passenger in Ruiz's car, and they chased D'Ambrosio for a about 4½ miles in order to shoot him in the head. The traffic on the road was heavy. Ruiz was forced to weave in and out of traffic and drive recklessly in order to catch up with D'Ambrosio who was driving his own car. When Ruiz and appellant finally caught up with D'Ambrosio, they used a shotgun to shoot him in the neck. D'Ambrosio rolled to the shoulder of the highway while being severely injured, and fortunately did not cause an accident on the highway. Thus, because appellant and his co-defendant drove recklessly, and because appellant and his co-defendant shot D'Ambrosio in an attempt to kill D'Ambrosio the driver and sole occupant of a moving motor vehicle traveling on the busy highway, appellant and Ruiz risked the safety of many people on the road.

The shooting with a shotgun created substantial risk of death

or great bodily harm to many persons. In this case the preponderance of the evidence demonstrates that the shooting into D'Ambrosio's car crated a substantial risk of death or great bodily harm to many persons (R 34-35; T 592). See § 921.001(6), Fla. Stat. (1997); Noel v. State, 705 So. 2d 648 (Fla. 4th DCA 1998)(held that a substantial risk of death or great bodily harm constitutes sufficient reason for the departure sentence)(citing §§ 921.0016(3)(I) and 921.001(6), Fla. Stat. (1993)).

Because the reason for the departure was valid, and because there was evidence to support it, the trial court did not abuse its discretion in departing from the sentencing guidelines.

## CONCLUSION

Wherefore, based on the foregoing arguments and the authorities cited therein, appellee respectfully requests this Court AFFIRM the trial court's judgment and sentence.

Respectfully submitted,
ROBERT A. BUTTERWORTH
Attorney General
Tallahassee, Florida


ETTIE FEISTMANN
Assistant Attorney General
Florida Bar No. 892830
1655 Palm Beach Lakes Boulevard
Suite 300
West Palm Beach, FL 33401-2299
(561) 688-7759

Counsel for appellee

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing "Answer Brief of Appellee" has been furnished by Carrier to: SOPHIA LETTS, Assistant Public Defender, Criminal Justice Building, 6th Floor, 421 Third Street, West Palm Beach, FL 33401, on September 2, 1998.


Counsel for appellee

# EXHIBIT   C


# APPELLANT'S REPLY BRIEF
# ON APPEAL

# IN THE DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA

## FOURTH DISTRICT

JOHN CAPELLETTI,⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀Appellant,⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
vs.⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)⠀⠀⠀CASE NO. 98-0879
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
STATE OF FLORIDA,⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀Appellee.⠀⠀⠀⠀⠀)
_____)

## REPLY BRIEF OF APPELLANT

On Appeal from the Circuit Court of the Seventeenth
Judicial Circuit, In and For Broward County, Florida
[Criminal Division]

⠀⠀⠀⠀⠀⠀⠀⠀⠀RICHARD L. JORANDBY
⠀⠀⠀⠀⠀⠀⠀⠀⠀Public Defender
⠀⠀⠀⠀⠀⠀⠀⠀⠀15th Judicial Circuit of Florida
⠀⠀⠀⠀⠀⠀⠀⠀⠀Criminal Justice Building
⠀⠀⠀⠀⠀⠀⠀⠀⠀421 Third Street/6th Floor
⠀⠀⠀⠀⠀⠀⠀⠀⠀West Palm Beach, Florida  33401
⠀⠀⠀⠀⠀⠀⠀⠀⠀(561) 355-7600


⠀⠀⠀⠀⠀⠀⠀⠀⠀SOPHIA LETTS
⠀⠀⠀⠀⠀⠀⠀⠀⠀Assistant Public Defender
⠀⠀⠀⠀⠀⠀⠀⠀⠀Florida Bar No. 116440

⠀⠀⠀⠀⠀⠀⠀⠀⠀Attorney for John Capelletti

## TABLE OF CONTENTS

PAGE

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

AUTHORITIES CITED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENTS OF THE CASE AND FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

ARGUMENT

### POINT I

**THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION FOR JUDGMENT OF ACQUITTAL BECAUSE THE CIRCUMSTANTIAL EVIDENCE PRESENTED AT TRIAL WAS INSUFFICIENT TO SUSTAIN APPELLANT'S CONVICTION.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

### POINT II

**THE TRIAL COURT ERRED IN DENYING APPELLANT'S MULTIPLE MOTIONS FOR MISTRIAL WHERE THE CUMULATIVE AFFECT OF THE WITNESS' IMPROPER TESTIMONY WAS PREJUDICIAL TO APPELLANT AND DENIED APPELLANT OF HIS RIGHT TO A FAIR TRIAL.**
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

### POINT III

**THE TRIAL COURT ERRED IN GRANTING THE UPWARD DEPARTURE SENTENCE WHERE IT WAS NOT PROVEN THAT APPELLANT WAS THE ONE WHO FIRED THE SHOTGUN AT THE VICTIM CAUSING THE RISK OF DEATH OR GREAT BODILY HARM.** . . . . . . . . . . . . . . . . . 6

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

i

# AUTHORITIES CITED

<u>CASES CITED</u>                                                              <u>PAGE</u>

<u>State ex rel. Miami Herald Pub. V. McIntosh</u>, 340 So. 2d 904
        (Fla. 1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

<u>Gold, Vann, and White, P.A. v. DeBerry</u>, 639 So. 2d 47
        (Fla. 4th DCA 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

<u>Sentinal Star Co. v. Edwards</u>, 387 So. 2d 367
        (Fla. 5th DCA 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

<u>State Farm Mut. Auto. Ins. Co. v. Resnick</u>, 636 So. 2d 75
        (Fla. 3d DCA 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

## PRELIMINARY STATEMENT

Appellant relies on his <u>Preliminary Statement</u> as stated in his Initial Brief.

The symbol "AB" will denote Appellee's Answer Brief.

## STATEMENTS OF THE CASE AND FACTS

Appellant relies on his Statement of The Case and Facts as stated in his Initial Brief.

## ARGUMENT

## POINT I

**THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION FOR JUDGMENT OF ACQUITTAL BECAUSE THE CIRCUMSTANTIAL EVIDENCE PRESENTED AT TRIAL WAS INSUFFICIENT TO SUSTAIN APPELLANT'S CONVICTION.**

Appellant relies on Point I as stated in his Initial Brief.

3

## POINT II

**THE TRIAL COURT ERRED IN DENYING APPELLANT'S MULTIPLE MOTIONS FOR MISTRIAL WHERE THE CUMULATIVE AFFECT OF THE WITNESS' IMPROPER TESTIMONY WAS PREJUDICIAL TO APPELLANT AND DENIED APPELLANT OF HIS RIGHT TO A FAIR TRIAL.**

Appellee's assertion that "D'Ambrosio had the right to comment on the improper impeachment" (AB-30) is unfounded. Furthermore, Appellee cites no authority for this assertion. For Appellee to maintain that it is not improper for a witness to tell opposing counsel the correct procedure for impeachment (AB-27-28) puts the witness in control of the courtroom.

It is a fundamental principle of law that a trial judge is charged with the conduct of a trial and has the inherent power to control all of its proceedings. Sentinal Star Co. v. Edwards, 387 So. 2d 367 (Fla. 5th DCA 1980). See also Gold, Vann, and White, P.A. v. DeBerry, 639 So. 2d 47, 56 (Fla. 4th DCA 1994); State Farm Mut. Auto. Ins. Co. v. Resnick, 636 So. 2d 75, 77 (Fla. 3d DCA 1994) (trial judge is the dominant figure responsible for the management, direction, and control of the proceedings). It is the trial court's responsibility to protect a defendant in a criminal prosecution from inherently prejudicial influences which threaten fairness of his trial and the abrogation of his constitutional rights. State ex rel. Miami Herald Pub. V. McIntosh, 340 So. 2d 904, 909 (Fla. 1976).

Here, as the trial judge was charged with the conduct of the trial and had the inherent power to control all of its proceedings, D'Ambrosio did not have "the right" to comment on what he believed to be improper impeachment, as Appellee asserts. D'Ambrosio's conduct, as set forth in appellant's Initial Brief, was highly improper and prejudicial to appellant and threatened

4

the fairness of appellant's trial.  Therefore, this Court should reverse and remand this cause for

a new trial.

## POINT III

**THE TRIAL COURT ERRED IN GRANTING THE UPWARD DEPARTURE SENTENCE WHERE IT WAS NOT PROVEN THAT APPELLANT WAS THE ONE WHO FIRED THE SHOTGUN AT THE VICTIM CAUSING THE RISK OF DEATH OR GREAT BODILY HARM.**

Appellant relies on Point III as stated in his Initial Brief.

6

## CONCLUSION

Based on the foregoing Argument and the authorities cited therein, Appellant respectfully requests this Honorable Court to reverse the judgment and sentence of the trial court and remand this cause for a new trial.

Respectfully submitted,

RICHARD JORANDBY
Public Defender
15th Judicial Circuit of Florida
Criminal Justice Building
421 Third Street/6th Floor
West Palm Beach, Florida 33401
(561) 355-7600

*Sophia Letts*

SOPHIA LETTS
Assistant Public Defender
Florida Bar No. 116440

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy hereof has been furnished to , Assistant Attorney General, 1655 Palm Beach Lakes Blvd,. Third Street, West Palm Beach, Florida by courier this 10th day of September, 1998.

*Sophia Letts*

SOPHIA LETTS
Attorney for John Capelletti

7

# EXHIBIT  D

*Per curiam affirmed* decision by
the Florida 4th DCA

# M A N D A T E

from

## DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
## FOURTH DISTRICT

**This cause having been brought to the Court by appeal, and after due consideration the Court having issued its opinion;**

**YOU ARE HEREBY COMMANDED that such further proceedings be had in said cause as may be in accordance with the opinion of this Court, and with the rules of procedure and laws of the State of Florida.**

**WITNESS the Honorable Barry J. Stone, Chief Judge of the District Court of Appeal of the State of Florida, Fourth District, and seal of the said Court at West Palm Beach, Florida on this day.**

DATE:                    9th day of April 1999.

CASE NO.:                1998-879

COUNTY OF ORIGIN:        BROWARD

T.C. CASE NO.:           97-7797 CF

STYLE:                   JOHN CAPELLETTI          v.  STATE OF FLORIDA

ORIGINAL TO:             HON. ROBERT E. LOCKWOOD, CLERK



*Marilyn Beuttenmuller*
**MARILYN BEUTTENMULLER, Clerk**
**Fourth District Court of Appeal**

CC:    PUBLIC DEFENDER #15
       ATTORNEY GENERAL - W PALM BEACH

/AL

# *EXHIBIT   E*

# *TRANSCRIPT PAGES OF TRIAL*

7      1    until let's say February of 1997?

       2        A.   My relationship was -- it wasn't significant.

       3    While I was working on the house, you know, I got to know him.

       4    He was next door.  And there were times that he did things

       5    for, you know -- minor things.

       6           I think it all started with a painting.  All

       7    started with painting.  Maria wanted the inside of the house

       8    painted and I was doing things on the outside.  This house

       9    needed all kinds of work.  So she suggested that I hire him.

     10          And -- not hire, if you want to use the word hire

     11    you can.  But ask him if he wanted to paint the inside of the

     12    house.  It was a mutual thing, not me per se, but she was also

     13    very significantly involved.

     14        Q.   And did you do that?

     15        A.   Yes, I did.

     16        Q.   Did you pay Mr. Cappelletti for helping you out?

     17        A.   Oh, yes.  Oh, yes.

     18        Q.   Did there come times where you would continue to

     19    do that type of thing?

     20        A.   Yes.  We end up having a relationship to a degree

     21    that he's -- the kind of guy you might wanna -- you wouldn't

     22    want to open an up a business with him or anything like that,

     23    but you talk to.  I'm a social guy.

     24        Q.   So there were times that he would do things or

     25    help you out around the house you would pay X amount of

ars to have him help you out?

    A.    Yes.  In all fairness, it wasn't alot of help,

he could smoke cigarettes and drink beer.  He's good

ertainment.

         MISS DADOWSKI:  Objection, Your Honor.

         THE WITNESS:  Well, I'm sorry.

         THE COURT:  Sustained.  Please disregard the last

response by the witness as being nonresponsive.

         THE WITNESS:  I didn't intend to be derogatory.

MR. GROSZ:

    Q.    Would there be times that you would pay him money

help out around the house, did that happen?

    A.    Yes, that happened.

    Q.    And directing your attention to February of 1997,

there come a time that you were relocating to Georgia,

r family?

    A.    Yes.

    Q.    And at that time, tell me how that was going to

pen?

    A.    I wasn't to organized with doing that myself

stly and I was a little shaky about it.  We already sold

one house.  We had to sell my house and I wasn't

fortable with going, you know, going anywhere.  I like

rida.

         So I had to sell my house and it's not that easy

, correct?

nd --

Jet at that

it wasn't

airport

port, but

at night.

ment.

ve the

evening?

t's just a

he gas

Move to

h your

11

1      Q.    Okay.  Now you're left with whatever, 40 or

2  whatever it is you have in your wallet?

3      A.    Fourty or whatever is close to that.

4      Q.    What is the next thing that happens?

5      A.    John starts going down this road about how did

6  this happen and how did that happen.  And with him and -- I'm

7  really just listening, but I catch the thrust of it.  I

8  understand he's basically trying to say, you know, gees, how

9  could you leave me in Georgia this or that.

10          I said John, you know I didn't leave, you left

11  yourself in Georgia.  He was basically trying to blame me, but

12  he was walking a line.  It was weird to understand what he was

13  trying to say.  I was really hoping he would say, you know,

14  can I borrow $20's, you know, for his umpteen time and I would

15  give it to him.

16          MISS DADOWSKI:  Objection, move to strike,

17      nonresponsive.

18          THE COURT:  Sustained.  Please disregard the last

19      response by the witness.

20  BY MR. GROSZ:

21      Q.    Did he ask you for money at that point?

22      A.    He never came clean and asked me for money.

23      Q.    Okay.  What was he saying to you?

24      A.    He said words to the affect that after he went on

25  this dissertation of the story, he said basically -- excuse

1    me, not basically, he said the words well, as far as I see it,

2    he got hundred -- it was 150 or $160 coming to him.  He was,

3    in so many words, saying that he had gotten arrested at this

4    gas station and when he --

5          MISS DADOWSKI:  I will object to this

6       characterization.

7          THE WITNESS:  Okay.  You don't want to know

8       what's happening then.

9          THE COURT:  Sustained.

10   BY MR. GROSZ:

11        Q.   Tell me, what does he say to you about the money

12   that he's saying is coming to him?

13        A.   He says to me that -- the way I see it and that's

14   not me Chris, this is his words, I quote the way I see it, I

15   got $160 coming to me.

16        Q.   Was he directing that at you or at anyone else in

17   the gas station?

18        A.   It had to be me.  It was kind of close to me.

19        Q.   And what's the next thing that takes place

20   between the two of you?

21        A.   Well, this goes on.  I'm pumping gas and I

22   exchange words.  And basically how do you figure that words to

23   that affect.  How do you figure that coming to you.

24          So what you're going to get.  What do you think I

25   owe you.  I paid you, John.  What are you talking about?

268

2

1          And he never said no, you didn't pay me, but he

2    woke up and became conscious and he was in jail.

3          MISS DADOWSKI:  Objection, Your Honor.

4          THE WITNESS:  I'm telling you what's he's saying.

5          THE COURT:  Hold on.

6          MISS DADOWSKI:  I move to strike.  Can we have a

7    side bar?

8          THE COURT:  Yes, ma'am.

9          (Thereupon, the following proceedings were

10   had side bar; outside the presence of the

11   jury:)

12         MISS DADOWSKI:  Your Honor, I request a mistrial.

13   All these characterizations that this witness keeps

14   making about my client, he was drunk, he was this.

15         Now he says he woke up, he was unconscious.  I

16   think the cumulative fact of all these statements taken

17   as a whole is prejudicing my client and I'm moving for a

18   mistrial.

19         THE COURT:  That is precisely why I kept telling

20   this witness from five minutes into his testimony to just

21   answer the question and nothing more.

22         I'm going to deny the motion.  I don't find that

23   the cumulative affect of the nonresponsive answers have

24   denied the Defendant Cappelletti a right to a fair trial.

25         You have to couch your questions in such a way

1    that it limits his freedom to embellish.

2              MR. GROSZ:  May I ask for leeway and latitude to

3    lead him because I'm going to do that.

4              THE COURT:  Ask the leading question.  If either

5    defense counsel feels it appropriate to object, I'm sure

6    they will.  But we need to prevent the witness from

7    continuing to go down these side streets.

8              MR. FLEISCHMAN:  Judge, just something that's not

9    related; can we take a bathroom break after the State's

10   done?

11             THE COURT:  Sure.

12             MR. FLEISCHMAN:  Thanks.

13             (Thereupon, the following proceedings were

14   had within the presence of the jury:)

15             THE COURT:  All right, Mr. Grosz.

16   BY MR. GROSZ:

17        Q.    Mr. Cappelletti is saying to you that he has 150,

18   $160 coming to him, that's what he's saying to you, is that

19   correct?

20        A.    That's correct.

21        Q.    At some point, does the conversation, without

22   getting into what it was, does a conversation get a little

23   more heated?

24        A.    Yes.

25        Q.    Where is Mr. Ruiz at this point, physically where

2051f68e

276

```
14    1    here.   Their volleying around.

      2              Q.    Mr. Ruiz's vehicle was jerky?

      3              A.    Yes.

      4              Q.    Is he passing up cars to catch up your vehicle at

      5    all?

      6              A.    He's doing somersaults.

      7              MISS DADOWSKI:   Objection, Judge.

      8    BY MR. GROSZ:

      9              Q.    He's not doing literally somersaults?

     10              A.    No --

     11              THE COURT:   Hold on, sir.

     12              MISS DADOWSKI:   Objection to the characterization

     13         of the words that the witness is using, somersaults.

     14              THE COURT:   Overruled.

     15    BY MR. GROSZ:

     16              Q.    The car is taking evasive action, is what you're

     17    saying?

     18              A.    I'm taking evasive action and he's agressively

     19    pursuing to catch up with my vehicle.

     20              Q.    And at some point -- Now, let me direct you to

     21    just outside the airport where 595 begins to branch off.  Does

     22    Mr. Ruiz's vehicle become parallel or at least somewhat

     23    parallel with your car?

     24              A.    Yes.

     25              Q.    What happens at that point?
```

15

1       Q.     What's that hole from?

2       A.     That's from the shotgun that was used to kill me

3  or attempt to kill me.

4       Q.     And did that hole in your window, was that --

5       MISS DADOWSKI:  Objection, Your Honor, I'll move

6      to strike that last answer.  That's a determination for

7      the jury.  That's a fact ultimately by the jury.  I ask

8      that jury disregard.

9       THE COURT:  Overruled.

10  BY MR. GROSZ:

11       Q.     Was this hole in your window from the shotgun,

12  was that there before April 13th of 1997?

13       A.     No, it was not.

14       Q.     Was that there before you saw John Cappelletti

15  and Eduardo Ruiz on April 13th of 1997?

16       A.     No, it was not.

17       Q.     Did you look like this before you saw

18  John Cappelletti and Eduardo Ruiz before April 13th of 1997?

19       A.     No.

20       MR. FLEISCHMAN:  Objection.

21       MISS DADOWSKI:  Objection.

22       THE COURT:  Sustained.

23  BY MR. GROSZ:

24       Q.     State's Exhibit 3, the blood on the bottom of

25  your vehicle, was that there before April 13th of 1997?

3

1          A.    Yes, I have.

2          Q.    And you further also recall that Mr. Cappelletti

3    and you, I guess, have an argument, is that a fair

4    characterization of what happened at the gas pump?

5          A.    That's -- Okay, fair, yes.

6          Q.    Well, you certainly didn't -- I mean, you stood

7    up to Mr. Cappelletti, didn't you?  You weren't happy about

8    him being in your face at that point?

9          A.    I stood up to him?  I was pumping gas, counsel.

10   I was standing up, but when I was pumping gas.

11         Q.    And then you further went onto testify today that

12   Eddie Ruiz at some point gets out of his car, right?

13         A.    Ah-huh.

14         Q.    And you said that he made some statements, are we

15   going to do this, you know, come on, what are we going to do,

16   right?

17         A.    What's with this.  Are we doing this or what,

18   that's right.  What are we doing here.  Are we doing this or,

19   that's right.

20               Not once, but at least -- at least two times, I

21   believe it was more like three, yes, he wanted to know if they

22   were going to go on with whatever it is they already planned

23   to do.  Okay.  Terry Nichols wasn't even in Oklahoma --

24               MR. FLEISCHMAN:  Judge, I'll object.

25               MISS DADOWSKI:  Objection, Your Honor.  Move to